OPINION
Defendants-appellants, William T. Taylor and his wife, Sherry Taylor ("appellants"), appeal their jury convictions in the Mason Municipal Court for child endangerment, a misdemeanor of the first degree.
Appellants' convictions stemmed from an incident which occurred on July 3, 1997. On that day, William's son from a previous marriage, Dustin Burkhardt, age six, was assaulted by another of William's sons, Kasey Taylor, age ten, Dustin's half-brother. Dustin lives with Pamela Bowser, his biological mother, in Iowa and was visiting his father for part of the summer. Appellants also have two older boys, ages fourteen and fifteen, in their household.
On July 3, William left at approximately 6:00 a.m. for work at Globe Construction Co. At about 9:00 a.m., Sherry, who also worked at Globe, left for work. She left Dustin in Kasey's care, telling Kasey to wash Dustin and get him breakfast. Kasey was then to call her at work, and she would pick them up.
Kasey gave Dustin a bath, but Dustin refused to put his head under water because tubes had recently been placed in his ears. Kasey began hitting Dustin and holding his head under water. He then threw Dustin out of the bathtub and again hit the younger boy. Kasey also whipped Dustin above the buttocks with a belt. Dustin's face, torso, and lower back were severely bruised, and he suffered petechiae, little spots of broken blood vessels under his eyes and around his ears, from the stress of holding his breath while held under water. After the beating, Kasey told Dustin that if Dustin told anyone, Kasey would hurt him.
At about 10:00 a.m., Kasey called Sherry at work and told her that Dustin had fallen in the bathtub. Kasey said that Dustin was bruised, but otherwise unharmed. Sherry spoke to Dustin, who confirmed Kasey's story and seemed alert. Sherry then called William at his job site, and they went home, arriving at about 10:45 a.m. When they arrived, Dustin was clothed, but his facial bruises were prominent. Appellants examined these bruises and watched Dustin, looking for any signs of impairment or injury. Dustin seemed fine, and the boys again confirmed Kasey's story.
Appellants took the children to lunch, where William noticed that Dustin's bruises were becoming more dramatic. Sherry became concerned about injury to Dustin's ears, and took him to the emergency room at Bethesda North Hospital. At 2:40 p.m., Dustin was seen by a nurse who noticed the bruises to Dustin's torso and back. She called Lori Baker, a social worker, who notified the police. The true story of Kasey's assault on Dustin was brought out at this time. Dustin was removed to a foster home, pending his biological mother's arrival to take him home.
On July 18, 1997, charges were filed by the city of Mason and the state of Ohio charging appellants with child endangerment under Mason City Ordinance 537.07(a) and R.C. 2919.22(A). On August 1, 1997, appellants pled not guilty, and a jury trial commenced on August 18, 1997. Appellants made a motion for acquittal under Crim.R. 29(A) at the close of the state's case. They renewed the motion at the close of the trial. On both occasions, the trial court overruled the motion.
Appellants were found guilty, and on October 28, 1997, each was sentenced to sixty days in jail and given a $150 fine. Fifty-seven days of William's jail sentence were suspended, so that he would serve three days. Fifty-six days of Sherry's sentence were suspended, so that she would serve four days. The trial court then allowed appellants to choose who served which sentence. On October 31, 1997, this court granted a stay of execution of sentence pending appeal. At that time, William had already served his three-day sentence. Sherry Taylor has yet to serve her four-day sentence. Appellants bring four assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN REFUSING TO GRANT THE TAYLORS' MOTION TO DISMISS UNDER CRIM.R. 29 BECAUSE THE STATE FAILED TO PROVE ALL ELEMENTS OF THE CRIME CHARGED.
In their first assignment of error, appellants assert that the state failed to prove the element of "recklessness," and, as a consequence, the trial court erred in not granting their motion to acquit under Crim.R. 29. We disagree.
Crim.R. 29 states, in pertinent part:
 (A) Motion for judgment of acquittal. The trial court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.
A trial court will not enter a judgment of acquittal under Crim.R. 29(A) for the defendant if reasonable minds could differ as to whether the state has proven every material element of the crime. State v. Thompkins (1997), 78 Ohio St.3d 380, 386; State v. Evans (1992), 63 Ohio St.3d 231, 248, certiorari denied (1992), 506 U.S. 886, 113 S.Ct. 246. In ruling on a Crim.R. 29(A) motion, the trial court must view the evidence in a light most favorable to the state, the party against whom the motion is directed. State v. Fields (1995), 102 Ohio App.3d 284, 288-89. Review of a denial of a motion for acquittal is de novo, and the trial court will not be reversed unless reasonable minds could only reach the conclusion that the evidence was insufficient to sustain a conviction. State v. Miley (1996), 114 Ohio App.3d 738,744, leave to appeal denied (1997), 77 Ohio St.3d 1584.
Appellants were convicted of child endangerment, a violation of R.C. 2919.22(A).[1] This provision is concerned with neglect, generally characterized by a failure to act.[2]
State v. Kamel (1984), 12 Ohio St.3d 306, 308. R.C. 2919.22(A) is not a strict liability offense. The culpable mental state required for a violation is that of "recklessness."[3] State v. McGee (1997), 79 Ohio St.3d 193, syllabus. Thus, the state was required to prove beyond a reasonable doubt, first, that appellants were the parents, guardians, custodian, persons having custody or control, or persons in loco parentis of Dustin. Second, the state must prove beyond a reasonable doubt that appellants recklessly violated a duty of protection, care, or support imposed by law which created a substantial risk[4] to health or safety of the child. R.C. 2919.22(A); Miley,114 Ohio App. 3d at 743.
A cursory reading of the facts shows that William Taylor and Sherry Taylor were the natural parent and stepparent of Dustin, respectively. They had the primary duty of care and protection while he was in their custody. Therefore, the first element of R.C. 2919.22(A), that appellants were the parents or guardians of Dustin, was satisfied beyond a reasonable doubt.
The guilty act necessary for a violation of R.C. 2919.22(A) is that the defendant violate a duty of care, protection, or support, thus creating a substantial risk to the health and safety of the child. A parent has a clear duty imposed by law to protect his or her child from abuse and to care for the child's injuries. See State v. Sammons (1979), 58 Ohio St.2d 460, 463, appeal dismissed, 444 U.S. 1008, 100 S.Ct. 655. It is an offense under R.C. 2919.22(A) when one fails, without excuse, to act in discharge of one's duty to protect one's child, where the result is a substantial risk to the child's health or safety. Kamel,12 Ohio St.3d at 309.
The evidence shows that appellants left Kasey and Dustin alone when they knew or should have known that harm would likely result. Leaving a ten year old to watch over a six year old, without any adult supervision, can be deemed a reckless violation of the duty of care and protection in general. It is likely that, without supervision, one of the boys could be hurt, and if so, the other would be unable to find help or render aid. There were also indications that Kasey would harm Dustin. There was evidence that Kasey previously had abused Dustin, and that the Taylor boys were violent with each other, often hitting one another. The knowledge of a substantial risk required by the statute can be inferred from such evidence.
The state presented the testimony of Officer Michael Carter of the City of Mason Police Department, who interviewed Kasey when appellants took Dustin to the hospital. Kasey told Officer Carter that he hit Dustin with a belt in the past when Dustin had not come when called. Officer Carter also testified that Kasey had threatened Dustin with further harm if he told anyone about the abuse. The state also presented testimony by Lori Baker, a social worker, and Doctor Allen Heightner, who both examined and questioned Dustin at the hospital. They testified that Dustin showed symptoms of past abuse and acted in a manner consistent with young children accustomed to abuse. The state also introduced evidence that the Taylor boys were rough on each other, especially the two older boys toward the younger boys, Kasey and Dustin.
Additionally, appellants initially disregarded the severity of Dustin's injuries and did not immediately take him to the hospital. Appellants waited over thirty minutes before going home after receiving the call from Kasey, and they did not take Dustin to the emergency room until after lunch. This was almost four hours after Kasey had beaten Dustin.
When considering this evidence as a whole, and viewing it in a light most favorable to the state, we find that the state presented sufficient evidence that appellants recklessly disregarded a known risk that Dustin would be harmed while left without adult supervision and in the sole care of Kasey, and then recklessly disregarded the severity of Dustin's injuries. The trial court did not err by denying appellants' motion for acquittal.
Accordingly, appellants' first assignment of error is overruled.
Assignment of Error No. 2:
 THE VERDICT RENDERED BY THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE TAYLORS COULD NOT HAVE KNOWN THAT THERE WAS A SUBSTANTIAL RISK OF INJURY.
In their second assignment of error, appellants contend that the evidence presented at trial could only lead the jury to find that appellants did not know that there was a substantial risk that Kasey would abuse Dustin. We disagree.
Unlike a challenge to the sufficiency of the evidence, which attacks the adequacy of the evidence presented, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. State v. Thompkins (1997), 78 Ohio St.3d 380,386-87, rehearing/reconsideration denied (1997), 79 Ohio St.3d 1451. When inquiring into the manifest weight of the evidence, the reviewing court sits as the "thirteenth juror and makes an independent review of the record." Id. at 387; Tibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 2218. In taking on this role, [t]he court, reviewing the entire record:
 weighs the evidence and all reasonable inferences, considers the credibility of all witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Martin (1983), 20 Ohio App.3d 172, 175. A jury verdict will not be disturbed on appeal if reasonable minds could arrive at the conclusion reached by the jury. State v. Fields (1995),102 Ohio App.3d 284, 287.
Upon review of the record, we cannot say that the jury lost its way in finding appellants guilty of child endangerment. It is not necessary that the state prove that appellants were aware of the risk specifically caused by Kasey. Rather, the state was required only to prove that appellants recklessly created a substantial risk to Dustin's health and safety. See Kamel,12 Ohio St.3d at 308. As discussed with respect to appellant's first assignment of error, the state presented evidence that appellants left Dustin under the supervision of a ten year old and, after becoming aware of his being injured, waited a significant period of time before taking Dustin to the hospital. Evidence of the Kasey's and Dustin's statements and conduct at the hospital support the inference that Kasey's abusive treatment of Dustin occurred for a noticeable period of time. Such indifference to the facts by appellants could reasonably be deemed a reckless disregard of a substantial risk of harm to Dustin.
We find that the jury's determination that appellants recklessly violated their duty of care and protection of Dustin was supported by and is not against the manifest weight of the evidence. Appellants' second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT SHOULD HAVE GRANTED THE TAYLORS' MOTION TO DECLARE A MISTRIAL BECAUSE THE PROSECUTOR WAS ALLOWED TO INTRODUCE EVIDENCE WHICH HAD NO PROBATIVE VALUE AND WAS HIGHLY PREJUDICIAL IN NATURE.
In their third assignment of error, appellants contend that the trial court erred in allowing into evidence inadmissible and prejudicial character testimony, and aggravated that error by refusing to declare a mistrial based upon that evidence. They assert that the presentation of such evidence was forbidden by Evid.R. 404 and was grounds for a mistrial. We disagree.
Appellants specifically challenge three rulings by the trial court which admitted testimony into the record. First, the court allowed the prosecutor to cross-examine Sherry Taylor about an event which happened after the incident at bar. One of the older children, Billy Taylor, was playing with a can of gasoline which he ignited and then kicked over onto another child in the neighborhood who was burned. Second, the court allowed the prosecutor to cross-examine Dustin's biological mother, Pamela Bowser, and William Taylor about an incident in which William threatened another man in a local mall. Last, the trial court allowed the prosecutor to cross-examine Bowser about a statement she made to a social worker wherein she said that she was concerned that appellants smoked marijuana in front of their children.
The granting or denying of a mistrial is within the sound discretion of the trial court, and will not be disturbed absent a showing that the accused has suffered material prejudice. State v. Blankenship (1995), 102 Ohio St.3d 534, 549, appeal not allowed (1995), 73 Ohio St.3d 1426, affirmed (1996), 74 Ohio St.3d 522, quoting State v. Sage (1987), 31 Ohio St.3d 173, 182. A mistrial should be granted only when a fair trial is no longer possible. State v. Franklin (1991), 62 Ohio St.3d 118, 127, certiorari denied (1992), 504 U.S. 960, 112 S.Ct. 2315, certiorari denied (1995), 516 U.S. 950, 116 S.Ct. 394. A mistrial should not be granted merely because some minor error or irregularity has arisen. Blankenship, 102 Ohio App.3d at 549.
Matters of evidence are within the sound discretion of the trial court. State v. Tinch (1992), 84 Ohio App.3d 111, 127, jurisdictional motion overruled (1993), 66 Ohio St.3d 1509. If the decision of the trial court appears to be reasonable, a reviewing court may not reverse the judgment, even if the reviewing court would have reached a different conclusion. State v. Snowden (1982), 7 Ohio App.3d 358, 361. A decision to admit or refuse evidence will be reversed only if the trial court exceeds the bounds of its authority, and such abuse materially prejudices the defendant. State v. Joseph (1995), 73 Ohio St.3d 450, 460, rehearing/reconsideration denied (1995), 74 Ohio St.3d 1423, certiorari denied (1996), 516 U.S. 1179, 116 S.Ct. 1277.
We begin with an overview of character evidence, and the proper uses for such evidence as they relate to the present appeal. Evid.R. 404(A) prohibits, with specified exceptions, the introduction of character evidence to prove that the person acted in conformity with that character.[5] With regard to a criminal defendant, character evidence may be introduced only if it is pertinent to the crime charged, and only if it is introduced in conformity with Evid.R. 405.[6] See Giannelli and Snyder, Rules of Evidence Handbook (1998) 88. The prosecution may attack the accused's character only after the accused has made character an issue. Evid.R. 404(A)(1).
Specific instances of conduct may be inquired into only in certain circumstances. Specific acts may be examined in cross-examination of a character witness, but only to determine whether the witness' knowledge of the instances would change his or her opinion of the accused. Evid.R. 405(A). Testimony of specific acts is also admissible for the purposes listed in Evid.R. 404(B),[7] when the evidence is not being used to establish conformity to character, but to establish one of the stated exceptions. State v. Broom (1988), 40 Ohio St.3d 277, certiorari denied (1989), 490 U.S. 1075, 109 S.Ct. 2089; State v. Soke (1995), 105 Ohio App.3d 226, cause dismissed (1995),74 Ohio St.3d 1475.
The list in Evid.R. 404(B) of justifiable purposes for the admission of evidence of other acts is neither exclusive nor exhaustive. Staff Notes to Evid.R. 404(B). Therefore, a party may introduce evidence of other acts, even though the purpose for its admission is not listed in Evid.R. 404(B), so long as it is not used to show conformity to a character trait. When used for proper purposes, the evidence may be admitted if relevant under Evid.R. 401 and not excluded under Evid.R. 403.[8] State v. Wilson (1982), 8 Ohio App.3d 216, 219.
We first consider appellants' allegation that the trial court erred in allowing the state to cross-examine Sherry Taylor about the incident in which Billy Taylor accidentally burned a child from the neighborhood. This incident occurred after Kasey abused Dustin, and after Dustin had been returned to his natural mother. Appellants argue that, because this event took place after the abuse, it is not relevant to the case at hand.
When the state cross-examined Sherry Taylor about the incident, the state was attacking the credibility of her testimony that her household was safe for the children. Evid.R. 404(A). Testimony of the event had earlier been introduced when the state cross-examined Pamela Browser, who testified that she believed appellants' household was a safe environment. The state had used the event as a means to attack the basis of Ms. Bowser's opinion of appellants. That evidence was admissible under Evid.R. 405(B).
We recognize that evidence involving harm to other children could have the effect of showing a conformity to character, even though it was relevant for other purposes, such as impeaching a witness' credibility or the basis of the witness' opinion. See Wilson, 8 Ohio App.3d at 218-220. When there is a question as to how to categorize evidence for purposes of determining its admissibility, the decision must fall to the trial judge, absent an abuse of discretion. State v. Lane (1997), 118 Ohio App.3d 230,234, appeal dismissed (1997), 78 Ohio St.3d 1491. In the case at bar, the trial court found that evidence of this incident had been introduced earlier. The evidence, while it may have had some tendency to show conformity to character, was properly admitted to rebut the basis of Ms. Bowser's opinion and Sherry Taylor's testimony concerning appellants' regard of the duty of care and protection, an essential element of the crime charged. Since the event was arguably more probative of appellants' failure to discharge their parental duties than it was prejudicial, we cannot say that the trial court abused its discretion in permitting that evidence to be received. Evid.R. 403.
Appellants next argue that the trial court erred in allowing the state to cross-examine Pamela Bowser and William Taylor concerning an incident wherein William Taylor confronted a man in a mall for mistreating a child. The trial court is entrusted with broad discretion in controlling the scope of and evidence presented in cross-examination. O'Brien v. Angley (1980), 63 Ohio St.2d 159,163. The event was first brought up by the defense in its direct examination of Ms. Bowser, when appellants sought to introduce testimony that they were concerned and responsible parents. Once criminal defendants seek to prove their character, the prosecution is allowed to rebut the same. Evid.R. 404(A)(1). On cross-examination, the state may inquire into specific instances of conduct. Evid.R. 405(A). Thus, the trial court did not err in allowing the prosecution to cross-examine the defense witnesses about this incident.
Appellants also challenge the trial court's ruling that the state could cross-examine Pamela Bowser about statements she made to a social worker which implied that appellants did not have a safe household. Ms. Bowser had told the social worker that appellants smoked marijuana in front of their children. Once again, appellants argue that this constituted improper character evidence.
When a witness at trial denies that she made a prior statement, or testifies at trial differently from a previous statement, the cross-examining party may use the earlier statement to impeach the credibility of the witness. Evid.R. 613. In the case at bar, Bowser testified for appellants, against whom she had earlier made disparaging remarks. Upon cross-examination, Bowser first testified that she did not recall talking to a social worker. After further questioning, she stated that she did not tell the social worker that she believed appellants to have an unsafe household. Bowser then testified that she had made the statement that appellants used drugs around the children out of anger. This inconsistency was a proper matter for impeachment, and we cannot say that the trial court erred in allowing the state attempt to impeach Bowser.
Appellants additionally assert that the trial court erred by allowing the state, in its opening statement, to allege that appellants have had interactions with Children's Protective Services in the past. Both the defense and prosecution are given wide latitude in their opening arguments, which are intended only to advise the jury what counsel expect the evidence to show. State v. Brown (1996), 112 Ohio App.3d 583, 599. Opening statements are not evidence, and they are not binding upon the jury. State v. Frazier (1995), 73 Ohio St.3d 323, 338, certiorari denied (1996), 516 U.S. 1095, 116 S.Ct. 820. The trial court clearly stated that such statements were not evidence, but only what the state intended to show. In fact, appellants have worked with children's services in the past to gain custody of Billy Taylor, and no prejudice can be shown by a single statement to that effect by the prosecutor.
We find that the admission of the challenged testimony was not for the purposes of establishing appellant's bad character. Therefore, the trial court did not err in allowing the evidence into the record and in refusing to declare a mistrial. Accordingly, appellants' third assignment of error is overruled.
Assignment of Error No. 4:
 THE TRIAL JUDGE COMMITTED PREJUDICIAL ERROR BY ALLOWING HIS OWN EX PARTE COMMUNICATION TO INFLUENCE HIS DECISION IN SENTENCING THE TAYLORS.
In their final assignment of error, appellants assert that they were unduly prejudiced when the trial court relied upon incorrect ex parte communications in determining sentence. We agree with appellants' contention.
William Taylor was sentenced to sixty days in jail, with fifty-seven days suspended, and assessed a $150 fine. Sherry Taylor was sentenced to sixty days in jail, with fifty-six days suspended, and assessed a $150 fine. Appellants were given the option of choosing who would serve three days, and who would serve four days. They also were given the option to serve their sentences separately so that one of them would be able to care for their children.[9] When the appeal was taken, William Taylor had served his sentence, and this issue is now moot with regards to him. Sherry Taylor's sentence was stayed pending appeal. Therefore, we will address this issue.
Sentencing is within the sound discretion of the trial court and shall not be disturbed absent an abuse of discretion. Toledo v. Reasonover (1965), 5 Ohio St.2d 22, 34. Abuse of discretion connotes more than mere error; it indicates that the trial court's attitude is arbitrary, unconscionable, or unreasonable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. In the present appeal, appellants contend that the trial judge's method of sentencing was arbitrary and unreasonable because the trial judge specifically relied upon an ex parte communication that appellants had rejected a generous plea offer. Defense counsel stated to the court that no such offer was given to appellants, and that, in fact, he was given indication that the prosecution was seeking only counseling, not a jail sentence, as punishment.
The prohibition against ex parte proceedings is outlined in Canon 3(A)(4) of the Code of Judicial Conduct, which states, in pertinent part:
 A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding.
 If ex parte communications are considered by the sentencing judge without notice to the accused, then due process is violated. Ohio v. Denger (July 19, 1996), Huron App. No. H-95-059.
The trial judge in the case at bar specifically stated that he believed that appellants were not remorseful for their omissions, based in part upon what he was told in what turned out to be an incorrect ex parte communication. When reading the sentencing transcript as a whole, it is clear that the trial court relied upon this communication in reaching its decision. Given this fact, it cannot be said that appellants were not prejudiced by the trial court's unreasonable and arbitrary reliance on the ex parte communication.
We therefore sustain the fourth assignment of error, reverse the sentence of the trial court and remand the case with directions that Sherry Taylor be sentenced in accordance with the evidence properly before the court.
Judgment affirmed in part, reversed in part and remanded.
POWELL, P.J., and KOEHLER, J., concur.
[1] R.C. 2919.22(A) states, in pertinent part:
 No person, who is the parent, guardian, * * * of a child under eighteen years of age, * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.
[2] The Committee Comment to R.C. 2919.22 states, in pertinent part:
 This section is aimed at child neglect and abuse which causes or poses a serious risk to the mental or physical health or safety of the victim.
 The first part of the section defines the offense of neglect as the violation of a duty of care, protection, or support of a child which results in a substantial risk to his health or safety.
[3] "Recklessness" is defined in R.C. 2901.22 (C) as:
 A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
[4] R.C. 2901.01(A)(8) defines "substantial risk" as:
 [A] strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist.
[5] Evid.R. 404 provides, in pertinent parts:
 (A) Character evidence generally Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:
 (1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same is admissible * * *.
[6] Evid.R. 405 reads:
Method of proving character:
 (A) Reputation or opinion — In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
 (B) Specific instances of conduct — In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.
[7] Evid.R. 404(B) reads:
 (B) Other crimes, wrongs, or acts Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
[8] Evid.R. 403 reads:
 Evid.R. 403. Exclusion of relevant evidence on grounds of prejudice, confusion, or undue delay:
 (A) Exclusion mandatory — Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
 (B) Exclusion discretionary — Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.
[9] Although appellants do not argue that giving appellants such a choice was improper, it must be noted that the trial court has the exclusive duty to determine punishment for conviction of a crime, and it may not delegate this or any other determination of the rights of an individual to a defendant or any other party. State v. Wilson (1995), 102 Ohio App.3d 467, 472.