STATE v. SAM BURNO, SIMON PORTEE AND LAWYER TUCKER.

(Filed 27 January, 1931.)

1. **Criminal Law G i—Physician qualifying as expert held competent to testify as to mental condition of prosecuting witness.**

    It is competent for a physician who has qualified as an expert, and who has attended the prosecuting witness in a prosecution for assault and battery, to testify from his own observation as to the mental incapacity of the prosecuting witness to have his evidence taken by deposition at one time and later when the depositions were taken that the witness' mind was sufficiently clear.

2. **Criminal Law G m—Evidence of defendant's guilt held sufficient to be submitted to the jury.**

    Testimony of the prosecuting witness that the defendant was one of several who had beat him, with testimony of an expert witness that the

prosecuting witness had sufficient mental capacity, after he had been beaten, to identify his assailants, is held sufficient to be submitted to the jury in a prosecution for assault and battery.

**3. Same—It is not necessary to prove motive in order to convict a defendant of crime.**

Where there is positive evidence that the defendant under indictment for an assault actually committed the offense it is not indispensable to a conviction that motive be shown.

APPEAL by defendant Sam Burno from *Oglesby, J.,* and a jury, at April Term, 1930, of RICHMOND. No error.

The above named defendants were tried on a bill of indictment charging an assault with intent to kill one Bostick Williams. All three of defendants were convicted of assault with a deadly weapon and the defendant, Sam Burno, appealed from such conviction and the judgment of the court in which each of the defendants were sentenced to serve eighteen months on the county roads of Richmond County. The alleged assault was committed on 21 July, 1929.

Bostick Williams testified, in part: "I know the defendants, having known Burno about eight years, Simon Portee eight or ten years, and Lawyer Tucker four or five years. Burno was living in Hamlet, but was running a drug store in Southern Pines. Portee and Tucker lived near me in the North Yard; no one lived nearer than 400 or 500 yards to me. . . . On Friday while I was at home about midnight the defendants came to my house; they broke the door open and rushed right in on me. They all had sticks and they began to beat me, and I said, 'What is the matter; what have I done?' and they did not answer, but each one hit me a lick apiece. I was so unconscious I could hear them say something but could not understand it. They hit me as many as three times, and I do not know how many more. These are the scars on my head from the licks. I did not come to myself until some time Monday, and when I did I was lying across my bed with my clothes on. . . . I was laid up between seven and eight weeks as near as I can remember."

Cross-examination, in part: "The defendant, Sam Burno, runs a drug store in Southern Pines, but he also has a store in the North Yards, which his wife looks after for him; Sam spends most of his time at Southern Pines, but comes home Saturday nights; his wife told me that he usually comes home on Saturday nights. There was nothing between me and Sam's wife. We are good friends and that is all. There is nothing between me and Sam Burno. I have never given him any cause to dislike me. Burno hit me first. I did not hit them; I had nothing to hit with."

It was admitted by defendant that Dr. M. A. Hatcher is an expert physician and surgeon. He testified: "I went to see Bostick Williams on the 21st or 22d of July. He was in a house on the North Yard section of Hamlet. Other people came to the house, but he had been living alone, I understood. He had many wounds on his head and was very bloody; several bruises on his body, but the worst ones were on his head. It is hard to tell what kind of instrument the wounds appeared to have been made with, but I think it was a blunt instrument. His eyes were bloodshot and somewhat swollen. He could not give a coherent statement of how he came by those injuries. Q. When do you think he could give a coherent statement? (Objection by defendant; overruled; exception.) It was two days later that we thought he could tell a straight story about it. . . . I saw him three times between Monday and the 24th, when he made the deposition. On the 24th, I had been there and dressed his wounds before he made the deposition. The other visits were once a day. His wounds seemed to be of a serious nature. Q. What was your opinion at the time you visited him the first day or two as to whether or not he would live? (Objection by defendant; overruled; exception.) We feared for his life. I feared for his life, because I did not know what internal injuries he had and what cranial injuries. I treated him from 22 July until 9 September. Q. From your examination of Williams, state whether or not you have an opinion, satisfactory to yourself, as to whether or not he was responsible for what he said or did not say on Monday. (Objection.) By the court: Tell the state of his mind. I will not let him give his opinion as to his physical state. A. I believe he was responsible mentally part of the time, and part of the time he was not. (To the foregoing question and answer objection by defendant; overruled; exception.) He would talk at times, and other times you could get no response to questions; he would appear to be hazy and *non compos mentis,* I believe they call it."

B. L. Finch testified, in part: "He made a statement to us. He said it was about one, Sunday morning, that these three defendants broke his door open and came in there and hit him with a stick and that was all he remembered until next day or Monday. He said this was Saturday night about twelve or one. I have known Bostick six or seven years and his general reputation is good, so far as I know. . . . It was Sam Burno's car the chief examined and found blood on. It was two or three days after this alleged assault. The spot was about as big as the palm of your hand. It was dried. . . . It was a Chrysler car in front of Sam's house in Hamlet. . . . The blood looked like it had not been there very long. It was not right red, but you could tell it was blood. You could not tell whether it was human or animal blood."

There was other corroborative evidence offered by the State.

The defendant denied his guilt and testified that at the time of the alleged assault he was at Southern Pines, and in this he was corroborated by several witnesses.

At the conclusion of the evidence defendant asked the court in writing to instruct the jury that if they found the facts to be as testified to by the witnesses, it would be their duty to return a verdict of not guilty as to Sam Burno. The court declined to do this, and the defendant excepted. The defendant renewed his motion to dismiss as of nonsuit after all of the evidence was in. The court declined to do so, and the defendant excepted. The defendant excepted to the following part of the charge of the court below: "The court further instructs you that motive is not a necessary element of the offense or either of the offenses charged in the bill under which the defendants are being tried. Intention is a necessary element of the offense of assault with intent to kill and must be established beyond a reasonable doubt; that is the intent to kill. It may be established by acts or may be established by the circumstances in the case."

The defendant duly assigned errors to the exceptions above set forth, and appealed to the Supreme Court.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*Fred W. Bynum for defendant, Sam Burno.*

CLARKSON, J. At the close of the State's evidence and at the close of all the evidence, the defendant, Sam Burno, made motions to dismiss or for judgment of nonsuit. C. S., 4643. The defendant at the conclusion of the evidence also requested the court in writing to instruct the jury that if they found the facts to be as testified to by the witnesses, that it would be their duty to return a verdict of not guilty as to Sam Burno. The court below refused these motions, and in this we can see no error.

The prosecuting witness testified that he had known defendant Burno about eight years. "Each one hit me a lick apiece . . . Sam Burno hit me first. I did not hit them; I had nothing to hit with." There is no conjecture or guess about this evidence. It is positive and unequivocal that defendant Burno hit him and was the first to do so. This was sufficient evidence to be submitted to the jury, and the probative force was for the jury to determine and not this Court.

Const. of N. C., Art. IV, sec. 8, in part, is as follows: "The Supreme Court shall have jurisdiction to review, upon appeal, any decision of the courts below, upon any matter of law or legal inference."

In *S. v. Lawrence,* 196 N. C., at p. 564, is the following: "The competency, admissibility and sufficiency of evidence is for the court to de-

termine, the weight, effect and credibility is for the jury. *S. v. Utley, supra* (126 N. C., 997); *S. v. Blackwelder,* 182 N. C., 899." *S. v. McLeod,* 198 N. C., 649.

The assignments of error in regard to the testimony of Dr. M. A. Hatcher cannot be sustained. Doctor Hatcher, an. expert, was being examined as to Williams' wound and the extent of his injuries. There appeared elsewhere in the defendant's evidence, some evidence of contradictory statements made by the prosecuting witness about the time that the doctor examined him and of which he was testifying. He testified that Williams could not give a coherent statement of how he came by his injuries. Thereupon, the solicitor asked the doctor, "When do you think he could give a coherent statement?" This was objected to, but the answer was admitted and exception taken. The doctor's reply was, "It was two days later that he thought he could tell a straight story about it." The doctor further testified that at this period Williams was responsible, mentally, part of the time, and part of the time he was not. He would talk at times and other times you could get no response to questions. He would appear to be hazy and *non compos mentis.* This, of course, was material, and it was the kind of evidence that the doctor, as an expert, could give from his own investigation of the patient, at that time. *S. v. Fox,* 197 N. C., 478, and the cases there cited at p. 486.

In 11 R. C. L., part sec. 35, "Expert opinion evidence," pp. 609-10, speaking to the subject: "A practicing physician, however, who has attended a patient, or examined him for the purpose of testifying, may state his opinion as to the nature of the disease or disability from which he was suffering, the facts which probably produced or might have produced his condition, the physical or mental effects to be expected from a certain injury or disease, the probable continuance and future course of an existing disease or disability, and the probable or possible cause of death."

The charge as to motive is not subject to criticism in this jurisdiction. "It is never indispensable to a conviction that a motive for the commission of the crime should appear. . . . *S. v. Green,* 92 N. C., at p. 782; *S. v. Stratford,* 149 N. C., 483; *S. v. Wilkins,* 158 N. C., 603." *S. v. Lawrence,* 196 N. C., at p. 565.

In the judgment below we find in law

No error.