THE STATE OF OHIO, APPELLEE, *v.* WILSON, APPELLANT.

(No. 44385—Decided December 16, 1982.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.

*Ms. Marillyn Fagan Damelio,* for appellant.

MARKUS, J. Defendant appeals from his convictions on three counts of rape, arguing that the trial court improperly admitted testimony about another sex offense by defendant at a later time, excluded expert testimony attacking the credibility of defendant's alleged confession, and failed to merge the three allied counts into a single rape conviction. We find no merit in defendant's last contention, and we conclude that any error described in defendant's first two claims was waived or was harmless in the cir-

cumstances of this case. Therefore, we affirm.

At the trial in December 1980, the state's case consisted of testimony and related exhibits from the seven-year old boy who was the alleged victim, his three sisters (ages fourteen, seven, and six), his mother, a medical records librarian, and three police officers. The boy testified that a man solicited him for sexual activity on November 15, 1979, and took him to a nearby church on November 16, 1979. In a downstairs room at the church, the man forced the boy to perform oral sodomy, forcefully caused the boy to submit to anal intercourse, and forcefully caused the boy to submit to oral sodomy. Immediately after being subjected to that assaultive conduct, the boy returned home and recounted his experience to his fourteen-year old sister.

His sister observed his disheveled appearance, bathed him, and washed his underclothes that were heavily soiled with a semen-like substance. That sister then accompanied the boy to a nearby street corner where the boy pointed out his assailant, and the assailant frightened them away by exposing his genitals. Later that day the boy and that sister told their mother about these events. The boy's mother reported the circumstances to the police by phone, but they apparently failed to respond to that call. His mother also took the boy to a local hospital emergency room that evening.

Approximately four months later, on March 16, 1980, the boy's two sisters (ages seven and six) were approached by the defendant in front of a nearby laundromat. These girls testified that defendant asked them to participate in sexual activity. Two police officers observed that conversation from a police car approximately sixty to sixty-five feet away, although they could not hear anything defendant said to the girls. One officer recognized the defendant and observed him touch the girls on the arm or shoulder. The other officer testified that

he observed the defendant fondling his genitals through his trouser pocket.

When the officers approached, the defendant walked away. The officers questioned the girls, then arrested the defendant for importuning.[1] Other information obtained from the girls caused the officers to transport defendant in their police car to the children's home. On their arrival there, the alleged rape victim came out of the house and provided details of the incident four months earlier. The officers then arrested defendant on the added charge of rape. Before they transported defendant to the police station and after they gave him appropriate advice about his constitutional rights, the defendant voluntarily stated he had given the alleged rape victim three dollars so he could perform oral sodomy on the boy. He also told the officer he preferred to be taken to the Cleveland Psychiatric Institute where he had been a patient previously.

Approximately twenty-five hours after defendant was booked and jailed on the rape charge, defendant requested an opportunity to make a further statement. He was again advised of his constitutional rights, both orally and by a written statement, in which he gave details of the offenses on November 16, 1979, and admitted the two acts of oral sodomy.

The defense argued that defendant was not the man involved in the November 16 rape offenses. The sole witness called by the defense was a guard at the Cleveland House of Corrections who testified that defendant was released from that institution after a fifty-day incarceration, at approximately 9:00 a.m. or 9:30 a.m., on November 16. Apparently the defense sought to demonstrate that defendant could not have solicited sex from the alleged rape victim on the preceding day, as the boy had testified, even though defendant's signed statement acknowledged that the solicitation and the sexual conduct both occurred after his release from jail on November 16.

The defense also sought to call the court's psychiatrist who had examined defendant to determine his competence to stand trial, but the court declined to permit that testimony. The defense proffered that the psychiatrist would have testified the defendant's psychiatric condition caused defendant to seek institutionalization, and that defendant's oral and written statements therefore lacked credibility. No claim was made that defendant was not guilty by reason of insanity, and the court had previously found defendant competent to stand trial with defense counsel's apparent concurrence.

## I

Defendant's first assignment of error asserts:

"It was prejudicial error for the trial court to admit testimony concerning other acts of the appellant for which he was not on trial."

Defendant claims that evidence of his subsequent unlawful importuning was admitted solely for the impermissible purpose of showing that appellant had a propensity to commit sex crimes.

Under Evid. R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." However, such evidence may be "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or

---

[1] R.C. 2907.07(A) provides:

"No person shall solicit a person under thirteen years of age to engage in sexual activity with the offender, whether or not the offender knows the age of such person."

Defense counsel told the court outside the jury's hearing that defendant had been acquitted at his trial on that charge, but neither party offered any evidence to that effect.

accident." The Staff Note to Evid. R. 404(B) emphasizes that this list of justifiable purposes for evidence of other acts is *not* exclusive or exhaustive. Therefore, a party may sometimes introduce "other acts" evidence, although the purpose for its admission is not enumerated in Evid. R. 404(B).

Where such evidence is not offered for the forbidden purpose, and is not admitted for one or more of the listed permissible purposes, then it is admissible only if it is relevant under Evid. R. 401 and not excluded under Evid. R. 403. Evid. R. 401 states that evidence is relevant where it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In this case, the disputed evidence showed that defendant was found in the immediate neighborhood of the earlier offense and that he was speaking to the alleged victim's sisters. It also showed the reason why he was transported to the alleged victim's home where he was confronted by the alleged victim and the alleged victim's older sister with details of the prior offense. Collectively, these circumstances corroborated his identification as the offender in his own oral and written statements.[2]

However, otherwise relevant and admissible evidence must be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid. R. 403(A). In the present case, the state did not offer evidence of defendant's arrest for importuning or the circumstances leading to that arrest, for the prohibited purpose of showing that defendant raped the boy in conformity with a character trait of soliciting sexual activity with young children. We recognize that such evidence could have that effect, even though it was relevant for other purposes. Thus, its probative value could be outweighed by its prejudicial effect. Since the importuning event was a significantly less serious offense and was closely intertwined with the arrest and identification for the rape charge, we cannot say that the trial court abused its discretion in permitting that evidence to be received.[3]

Moreover, any error in receiving that evidence has not been properly preserved for appellate action. Defense counsel made a motion *in limine* before the trial began, requesting that all reference to the

---

[2] The disputed evidence also corroborated defendant's identification by the alleged victim at the time of that confrontation, and the identification by the boy's older sister who confirmed this was the offender pointed out by the boy on the day of the offense. Those prior identifications were admissible, since they are excluded from the definition of hearsay by Evid. R. 801(D)(1)(c). However, the trial court suppressed all identification testimony by those witnesses when the boy was unable to make an in-court identification of the defendant at a pretrial suppression hearing. That suppression motion should have been denied because the evidence demonstrated that none of the pretrial identifications resulted from impermissibly suggestive procedures employed by law enforcement personnel. Cf. *Stovall* v. *Denno* (1967), 388 U.S. 293; *State* v. *Moody* (1978),

55 Ohio St. 2d 64 [9 O.O.3d 71]; *State* v. *Kaiser* (1978), 56 Ohio St. 2d 29 [10 O.O.3d 75]. The ability of a witness to make a strong in-court identification may help to demonstrate an independent basis for the identification, despite somewhat suggestive procedures used by law enforcement personnel at an earlier time. *State* v. *Latham* (1972), 30 Ohio St. 2d 92 [29 O.O.2d 193]. However, the inability of a witness to make an in-court identification does not justify suppression of his earlier identification. The weight given to the earlier identification without corroboration by an in-court identification is a matter for evaluation by the trier of fact.

[3] Defendant made no reference at trial or on this appeal to the significance of R.C. 2907.02(D) for this evidentiary issue, so we do not consider that question. Evid. R. 103(A)(1).

importuning episode be excluded. The trial judge denied that motion, without deciding the merits of the defense objection, and directed that the issue be raised at the trial when it developed. Even if the trial judge had denied the motion *in limine* by ruling that the evidence was proper, counsel asserting the objection would have been obliged to challenge the evidence when the full context of the evidentiary issue was presented during the trial.

Failure to object to evidence at the trial constitutes a waiver of any challenge, regardless of the disposition made for a preliminary motion *in limine.* Evid. R. 103(A)(1); *State* v. *White* (1982), 6 Ohio App. 3d 1, 4; *Fetzek* v. *Lafon* (December 13, 1979), Franklin App. No. 79 AP-419, unreported. In this case, defense counsel did object to some evidence on this subject. He also asserted a "continuing objection" of undefined breadth, and on one occasion the court seemingly authorized that procedure.

However, testimony was also received without objection to describe the supposed importuning and the resulting arrest, when it was given by the two girls and the two police officers. Some of those answers were directly responsive to defense counsel's own questions. In this case, evidence received without defense objection or at defense counsel's instance constituted a waiver of the objection or rendered harmless any error in admitting the disputed testimony. Cf. *Ohio Fuel Gas Co.* v. *Ringler* (1930), 9 Ohio Law Abs. 202; *Scott* v. *Long* (1959), 110 Ohio App. 516 [13 O.O.2d 284]; *Patterson* v. *George F. Alger Co.* (1952), 64 Ohio Law Abs. 385; *Heldman* v. *Uniroyal, Inc.* (1977), 53 Ohio App. 2d 21 [7 O.O.3d 20]. But, see, *Haase* v. *Ryan* (1955), 100 Ohio App. 285 [60 O.O. 251]; *Ross* v. *Stricker* (1949), 85 Ohio App. 56 [40 O.O. 59], reversed on other grounds (1950), 153 Ohio St. 153 [41 O.O. 205].

In other circumstances no waiver might result from cross-examination of an adverse party's witness on a subject developed over objection during the direct examination. But here, defense counsel asserted that defendant was emotionally and psychiatrically disturbed when he made the inculpatory statement in the police car within minutes after the supposed importuning incident. Thus, evidence about the defendant's activity within that short time interval is inextricably intertwined with the state's identification evidence and the defendant's explanation of the inculpatory statement. Defense counsel cannot rely on defendant's claimed agitated state while excluding evidence of the nature and source of at least part of that agitation.

For these reasons, defendant's first assignment of error is overruled.

## II

Defendant's second assignment of error asserts:

"It was an abuse of discretion and a trespass on the jury's function as factfinder when the trial judge refused to admit expert testimony which would tend to prove that a confession which was voluntarily given lacked credibility.

"A. Determining questions of weight or credibility given to evidence is a function of the jury.

"B. Expert testimony which was directed to whether a confession was credible was erroneously excluded by the trial court."

Defense counsel sought unsuccessfully to present expert testimony which he claimed would impeach the defendant's inculpatory statements. The trial judge must decide preliminary evidentiary questions of admissibility, including the admissibility of alleged confessions. Evid. R. 104(A). The jury must determine the weight and credibility of the admitted evidence, and the court's preliminary determination of admissibility does not preclude further evidence affecting its weight and credibility. Evid. R. 104(E).

"If scientific, technical, or other

specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Evid. R. 702. In appropriate cases psychiatric testimony can be used to impeach a witness whose ability to perceive, remember, or relate events is allegedly impaired by organic illness or a psychiatric disorder. *United States* v. *Hiss* (S.D. N.Y. 1950), 88 F. Supp. 559; *Ingalls* v. *Ingalls* (1952), 257 Ala. 521, 59 So. 2d 898; *Ellarson* v. *Ellarson* (1921), 198 App. Div. 103, 190 N.Y. Supp. 6; *State* v. *Burno* (1931), 200 N.C. 267, 156 S.E. 781; *Taborsky* v. *State* (1955), 142 Conn. 619, 116 A. 2d 433; *State* v. *Armstrong* (1950), 232 N.C. 727, 62 S.E. 2d 50; *Mosley* v. *Commonwealth* (Ky. 1967), 420 S.W. 2d 679.

The credibility of a declarant who made an extra-judicial statement can be impeached, when that statement is received in evidence as non-hearsay or an exception to the hearsay bar. Evid. R. 806. Therefore, psychiatric testimony can be used in appropriate cases to impeach the non-testifying declarant whose out-of-court statement is admitted into evidence, where the declarant's ability to perceive, remember, or relate events is allegedly impaired by organic illness or a psychiatric disorder. *People* v. *Joyce* (1922), 233 N.Y. 61, 134 N.E. 836.

At the same time, we must recognize that psychiatric or psychological testimony can assert a scientifically accurate conclusion on subjects whose scientific reliability remains uncertain. To that extent, such evidence should be rejected if the probative value of the expert testimony is outweighed by its prejudicial effect and its ability to confuse and mislead the jury. Evid. R. 403(A). Thus, this court has previously upheld exclusion of psychological testimony about the reliability of eyewitness identifications by persons who suffer from no physical or mental abnormality. *State* v. *Sims* (1981),

3 Ohio App. 3d 321, 325. See, also, *Criglow* v. *State* (1931), 183 Ark. 407, 36 S.W. 2d 400; *People* v. *Johnson* (1974), 38 Cal. App. 3d 1, 112 Cal. Rptr. 834; *Jones* v. *State* (1974), 232 Ga. 762, 208 S.E. 2d 850.

Impeachment by expert psychological or psychiatric testimony has been disallowed where there has not been a sufficient demonstration that the supposed analysis is reasonably well accepted by the applicable scientific community. *People* v. *Williams* (1959), 6 N.Y. 2d 18, 159 N.E. 2d 549 (expert opinion excluded as to credibility of narcotics addict); *State* v. *Walgraeve* (1966), 243 Ore. 328, 413 P. 2d 609 (no requirement to appoint psychiatrist for examination of prosecutrix without such a showing); *State* v. *Klueber* (1965), 81 S.D. 223, 132 N.W. 2d 847 (same). Cf. *State* v. *Thomas* (1981), 66 Ohio St. 2d 518 [20 O.O.3d 424] ("battered wife syndrome" not yet demonstrably established to permit psychiatric testimony in support of self-defense claim).

In the present case, defense counsel proffered that the rejected expert psychiatric testimony would have shown that defendant suffered from schizophrenia, "passivity," and "institutionalization." That testimony would supposedly have opined that these disorders altered defendant's motivation for statements made to the police and that they diminished the credibility of these statements. In other words, the expert witness was expected to say that defendant's "institutionalization disorder" might have caused him to lie in order to be jailed or hospitalized, and that his "passivity disorder" might have caused him to accept allegations by the victim or the police.

That proffer was defective in two respects. First, no offer was made to show the scientific reliability of diagnoses of an "institutionalization disorder" or a "passivity disorder." Since we know of no Ohio decision which takes judicial notice that such diagnoses are recognized and

reliable, such a preliminary showing would be a mandatory predicate for that expert testimony.

Second, the proffer fails to submit expert opinion testimony with the requisite degree of certainty for consideration by a jury. Defense counsel made no representation that the expert would testify that these claimed "personality disorders" did cause defendant to make false statements or that they probably caused defendant to make false statements. Instead, defense counsel proffered that the evidence would show that defendant was "prone to do certain things." Ordinarily, Ohio courts will not permit expert testimony about cause and effect relationships unless they are stated as probabilities. *Shepherd* v. *Midland Mutual Life Ins. Co.* (1949), 152 Ohio St. 6 [39 O.O. 352]; *Cooper* v. *Sisters of Charity* (1971), 27 Ohio St. 2d 242 [56 O.O.2d 146]; *Aiken* v. *Indus. Comm.* (1944), 143 Ohio St. 113 [28 O.O. 50]; *Brandt* v. *Mansfield Rapid Transit, Inc.* (1950), 153 Ohio St. 429 [41 O.O. 428]. Opinions expressed with a lesser degree of certainty are excluded as speculative.

Finally, any error in the exclusion of this proffered expert testimony was harmless beyond a reasonable doubt. The sole thrust of the testimony was a challenge to the defendant's credibility at the time he made his oral and written statements to the police. However, the statements contained information known only to the victim and his assailant, including the time and place of the assaults and details of the assaultive conduct. No evidence was presented that such information was provided to the defendant by the victim or the police before he made those statements. Cf. *People* v. *Joyce,*

*supra* (exclusion of expert testimony was prejudicial where other evidence showed that police suggested contents of statement to defendant). Further, defendant's statements repeatedly asserted that he paid the victim to participate in that sexual activity, contrary to the claims of the victim and the police. From the overwhelming weight of the evidence, we conclude that the dubious opinion testimony would not have altered the result.

Defendant's second assignment of error is overruled.

### III

Defendant's third assignment of error asserts:

"The trial court erred in permitting conviction for three counts of rape because these offenses are allied offenses of similar import within the contemplation of Ohio Revised Code § 2941.25."

R.C. 2941.25 provides:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

Defendant argues that he should have been convicted of only one count of rape,[4]

---

[4] Rape is defined in R.C. 2907.02:

"(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

"(1) The offender purposely compels the other person to submit by force or threat of force.

"* * *

"(3) The other person is less than thirteen years of age, whether or not the offender knows the age of such person.

"(B) Whoever violates this section is guilty of rape, a felony of the first degree. If the offender under division (A)(3) of this section pur-

claiming that oral sodomy and anal intercourse are "allied offenses of similar import" within the meaning of R.C. 2941.25(A).

We reject the state's contention that the issue is moot since the sentences were imposed concurrently rather than consecutively. The nature of the sentence has no relation to the propriety of multiple convictions. However, entry into two separate bodily orifices constitutes two separate acts of rape, permitting separate convictions, even though the sexual conduct occurs at one place and with no significant lapse of time between the acts of rape. *State* v. *Barnes* (1981), 68 Ohio St. 2d 13 [22 O.O.3d 126]; *State* v. *Ware* (1977), 53 Ohio App. 2d 210 [7 O.O. 3d 280]. Therefore, convictions with sentences on each of the three counts was proper here.

Defendant's third assignment of error is overruled.

*Judgment affirmed.*

PATTON, P.J., and PARRINO, J., concur.

---

posely compels the victim to submit by force or threat of force, whoever violates division (A)(3) of this section shall be imprisoned for life."

Sexual conduct is defined in R.C. 2907.01:

"(A) 'Sexual conduct' means vaginal intercourse between a male and female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."