OPINION
Defendant-appellant Eugene Achim Griffith appeals the April 2, 1999 Judgment Entry of the Stark County Court of Common Pleas which found appellant guilty of having weapons while under a disability and carrying a concealed weapon. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS
Appellant and his wife, Jeri Griffith, lived in the upstairs apartment of a duplex building at 431 Lincoln Avenue, NW, Canton, Ohio. On January 6, 1999, appellant's downstairs neighbor, Kevin Shaw, heard a disturbance coming from appellant's apartment and called the police. Officer Sam Dubina, of the Canton Police Department responded to the "trouble call" at the residence. When Officer Dubina arrived, he neither saw nor heard a disturbance emanating from the upstairs apartment, so he knocked on Mr. Shaw's door. Mr. Shaw and his son-in-law, Christopher Fritz, told Officer Dubina about the earlier disturbance. As the men talked, Officer Dubina heard a man and woman yelling. The voices seemed to be coming from one block away and headed toward the duplex. Expecting the voices to be appellant and his wife, Officer Dubina waited on the porch to speak with the couple. Officer Dubina was out of the sight of any one arriving at the building. Mrs. Griffith entered the building alone. Officer Dubina spoke to her; she was disheveled and spoke in an excited manner, but did not appear to be injured. She denied there was any problem between her and her husband. Shortly thereafter, appellant entered the building and saw Officer Dubina speaking to Mrs. Griffith. Officer Dubina told appellant he needed to speak with him. Appellant did not respond, but tried to walk past the officer and up the steps toward his apartment. Officer Dubina put his hand on appellant's shoulder as he passed, repeating that he wanted to speak with appellant. Appellant said nothing and turned away from Officer Dubina. As he turned, Officer Dubina saw appellant reach inside his clothing and toward his waistband. Officer Dubina immediately grabbed appellant's arm, pulling it back and away from his clothing. As appellant's arm came back toward the officer, a gun dropped from appellant's hand. The gun was later determined to be loaded and operable. Officer Dubina attempted to place appellant under arrest, but appellant struggled. Mr. Shaw and Mr. Fritz came out of the downstairs apartment and helped Officer Dubina subdue appellant. While Officer Dubina, Mr. Shaw and Mr. Fritz tried to subdue appellant, Mrs. Griffith began to kick and hit Officer Dubina. Appellant shouted to his wife to "get the gun," but Officer Dubina managed to push and keep Mrs. Griffith away. The scuffle ended when Officer Kirk McConnell, a member of the K-9 unit and his police dog arrived. Several other officers arrived to secure the scene and transport appellant and his wife to the police station.
After hearing the evidence, a jury found appellant guilty of both counts of the indictment. In an April 2, 1999 Judgment Entry, the trial court memorialized the jury's verdict and found appellant guilty of having weapons while under disability in violation of R.C. 2923.13 and carrying a concealed weapon in violation of R.C. 2923.12. It is from that judgment entry appellant prosecutes this appeal assigning as error the following:
 I. WHETHER THE TRIAL COURT ERRED IN ADMITTING IRRELEVANT EVIDENCE IN VIOLATION OF OHIO RULE OF EVIDENCE 402 THEREBY DENYING APPELLANT A FAIR TRIAL.
 II. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE APPELLEE TO INTRODUCE EXTRINSIC EVIDENCE OF BAD CHARACTER THEREBY DENYING APPELLANT A FAIR TRIAL.
 I
In his first assignment of error, appellant maintains the trial court erred in admitting certain evidence in violation of Evid.R. 402. Appellant contends the admission of this irrelevant evidence denied appellant a fair trial. For the reasons that follow, we disagree. Relevant evidence is "evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. All relevant evidence is admissible. Evid.R. 402. Evidence which is not relevant is not admissible. Id. Accordingly, we look to what evidence was relevant in the matter sub judice. Appellant was charged with carrying a concealed weapon in violation of R.C.2923.12 which provides, in pertinent part: (A) No person shall knowingly carry or have, concealed on his or her person or concealed ready at hand, any deadly weapon or dangerous ordnance.
Appellant was also charged with having a weapon while under a disability in violation of R.C. 2923.13. That statute provides, in relevant part: (A) Unless relieved from disability * * *, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
 * * * (2) The person * * * has been convicted of any felony offense of violence * * *.
 (B) No person who has been convicted of a felony of the first or second degree shall violate division (A) of this section within five years of the date of the person's release from imprisonment or from post-release control that is imposed for the commission of a felony of the first or second degree.
 (C) Whoever violates this section is guilty of having weapons while under disability.
Any evidence tending to make it more or less likely appellant committed either of the above-referenced offenses was relevant. The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173. We will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion; i.e. unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. State v. Adams (1980),62 Ohio St.2d 151, 157. Evid.R. 103(A)(1) specifically provides as follows: (A) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context.
See also: White v. Richmond (1842), 16 Ohio St. 6; State v. Grubb (1986), 28 Ohio St.3d 199; State v. Wilson (1982), 8 Ohio App.3d 216.
An appellate court need not consider an error which a party complaining of the trial court's judgment could have called but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. State v. Williams (1977), 51 Ohio St.2d 112, syllabus paragraph one. Appellant's brief sets forth as error specific evidentiary rulings by the trial court. We will address each in turn. Appellant first contends the trial court erred in permitting Officer Dubina to testify about his feelings while attempting to subdue appellant:
Q. From, from yourself. How did you feel about your safety?
A. During the time I was struggling?
Q. Uh-huh.
 A. Well, I felt at any time that if he could have broke loose, you know, that he could have got the gun and shot me.
 MR. LODICO: Judge, I object and I move for an immediate mistrial. May I approach?
THE COURT: You may approach.
 (A conference was held at the bench outside the hearing of the jury.)
 MR. LODICO: It's my objection. This is a Prosecutor who's just brought out evidence that this guy's afraid for his life and my guy may have killed him. He's not charged with that. We discussed that earlier and you said well, we wouldn't get into any of that. I didn't get into it. She elicited that response intentionally as a prosecutor. That is misconduct, and I move for a mistrial. He's charged with weapons under disability and CCW, no threat of force or any kind of harm to this officer at all.
 MS. HARDY: * * * I have a right for my officer's state of mind to come in. He called for backup, he had help from the neighbors. * * * I think my officer's state of mind at the point has a bearing on all this.
 MS. HARDY: Plus his defense is that he did — that he was going to give it to him so I think —
 THE COURT: Well, the motion for mistrial is overruled, but I will, I will inform the jury not to consider what, what might have happened with regard to, to might have shot hm, etcetera, that type of thing. T. 151-152.
 We agree with the trial court Officer Dubina's statement was objectionable as speculative. Further, we note the trial court was fully prepared to instruct the jury of the error. However, trial counsel then made the following strategic decision: MR. LODICO: Judge, if you're going to overrule the mistrial, then I would ask that there be no curative instruction. That's fine. But thank you for the offer. I would ask that you do not instruct.
THE COURT: All right.
MR. LODICO: Thank you, sir.
(End of conference at the bench).
T. at 152-153.
Counsel's tactic of requesting the trial court to not instruct the jury was tantamount to a withdrawal of his objection. Accordingly, this portion of appellant's first assignment of error is overruled as being waived. Appellant next maintains the entire testimony of Officer Kirk McConnell of the Canton Police Department was irrelevant. Officer McConnell, who is in charge of a K-9, helped to subdue appellant by threatening to release his dog unless appellant stopped struggling. In his brief, appellant maintains Officer McConnell's entire testimony consisted of the effort undertaken to arrest appellant. While this is true, appellant made no objection to the relevancy of Officer McConnell's testimony at trial. Accordingly, we find this argument to be waived. This portion of appellant's first assignment of error is overruled. Appellant next maintains the testimony of Kevin Shaw, appellant's downstairs neighbor, was also irrelevant to the charges. Mr. Shaw testified he heard appellant and his wife arguing on the night in question and heard something that sounded like appellant throwing his wife down the stairs. Shortly after this sound, Mr. Shaw heard appellant yelling, and saw appellant and his wife running out of the duplex. Appellant maintains this testimony was irrelevant and prejudicial to him because he was not charged with domestic violence. Because this testimony had nothing to do with the elements of carrying a concealed weapon and/or having a weapon under disability, appellant maintains this testimony was improperly admitted. Because we find appellant put the facts surrounding the initial disturbance and subsequent arrest at issue in this case, we disagree. During opening statement, appellant advanced a justification for his possession of the firearm. While conceding appellant did have a gun concealed on his person less than six months after being released from prison, trial counsel told the jury the evidence would show appellant was justified in acting as he did. Trial counsel maintained the evidence at trial would demonstrate appellant was forced to take the gun from his drunk and belligerent father to protect himself and his pregnant wife. This justification was not relevant to whether appellant actually carried a concealed weapon or whether he had been convicted of a felony before he possessed the gun. Rather, appellant asked the jury to excuse his behavior because he had a good reason for doing what he did. While we would agree statements made during opening argument are not evidence, we find the evidence elicited by appellant on cross-examination of the State's witnesses expanded the area of relevancy to include appellant's proposed justification. Appellant's cross-examination of Officer Dubina, the first witness called by the State, made relevant the issues surrounding any potential argument between appellant, his wife and his father. Appellant's trial counsel elicited specific information regarding the altercation which caused Mr. Shaw to contact the police and appellant's justification in allegedly taking the weapon from his father, concealing the weapon on his person, and leaving the residence.
The following passages from appellant's cross-examination of Officer Dubina demonstrates appellant's attempt to put this justification at issue in the trial:
 Q. On direct didn't you just say at one point he said I was trying to take it away from my father for safekeeping, I was just trying to give it to you? Isn't that what you said he said?
A. That was after the fact.
Q. But he said that to you, right? Correct?
A. Right, he said that.
* * *
 Q. Okay. Now, we know for sure that he told you at one point I was trying to get the gun — I got the gun from my father for safekeeping; that's correct, correct?
A. He did say that.
Q. Okay. Now, his father was intoxicated, correct?
A. That's what I feel.
Q. Highly intoxicated, right?
A. Nods affirmatively.
* * *
 Q. Okay, wait now. You just said that he told you the only reason he had the weapon was he took it for safekeeping — that's — we, we agree with that, right —
A. Yes.
 Q. — from this father? Okay. And what we have upstairs you find is a father who's drunk sitting in the middle of the floor, correct?
A. Uh-huh.
* * *
 Q. So we have a father who's there, correct? That turns out to be true, doesn't it? Right?
A. The father's there.
 Q. Okay. His father's upstairs in the apartment that they had left drunk, correct?
A. Uh-huh.
* * *
 Q. Okay. Did you ever really give these people ever a chance to tell you what happened at all?
A. Yes.
* * *
Q. All right. And then the gun just fell to the floor, correct?
A. Fell to the floor.
 Q. And once you saw that gun you would agree with me that oh, boy, you don't know what's going on, you're going to secure the situation, right?
A. Right.
 Q. At that point you don't want to stop and think why, who, what's going on, what you've got is a gun, a guy, a trouble call; you're going to get this under control for your own safety and everybody's safety, right?
A. Correct.
 Q. So once the gun fell you would agree that there was really little time for conversation; it just turned into a melee, correct? Pretty much?
A. Yeah, I was trying to handcuff him.
 Q. Okay. You were trying to do your job at that point, right? I mean, that's —
A. Yeah.
* * *
 Q. The fact of the matter is, Officer, you don't know what happened in that apartment before you got called do you?
A. No, just told.
 Q. You don't know what he was dealing with upstairs in that apartment with his pregnant wife and his drunk father, do you?
A. No.
* * *
T. at 159, 163-165, 179-81, 185.
Appellant did not object to Officer's Dubina's direct testimony about the circumstances surrounding the incident on the grounds of relevancy. Further, appellant then cross-examined Officer Dubina about the same subject matter. We find no abuse of discretion in the trial court's determination appellant opened the door to the issues surrounding the incident for which appellant was arrested. Accordingly, this portion of appellant's first assignment of error is overruled. Appellant next maintains the testimony of Chris Fritz, son-in-law of the downstairs neighbor, Mr. Shaw, and one of the individuals assisting Officer Dubina in subduing appellant, was also irrelevant to the elements of the crimes with which appellant was charged. For the same reasons discussed above with regard to the testimony of Mr. Shaw, we find this testimony relevant to the issues surrounding the crimes with which appellant was charged. Finally, appellant maintains the rebuttal testimony of Mr. Shaw was also irrelevant. On rebuttal, Mr. Shaw testified he heard appellant and his wife arguing in the apartment above him. Mr. Shaw stated he heard appellant say to his wife:
 "I'm going to kill you, bitch" and "a couple other things like I hate you, stuff like that."
T., Vol. II p. 50.
On appeal, appellant maintains this testimony was irrelevant to prove the elements of the crimes with which appellant was charged. Appellant made no objection at trial to the relevancy of this testimony. Accordingly, this argument is waived on appeal. Appellant's first assignment of error is overruled.
 II
In appellant's second assignment of error, appellant maintains the trial court erred in allowing the State to introduce extrinsic evidence of bad character in violation of Evid.R. 608. Specifically, appellant maintains the trial court erred in permitting the State to call Mr. Shaw as a rebuttal witness to rebut the testimony of the sole defense witness, Jeri Griffith. Evid.R. 608(B) states in pertinent part:
(B) Specific instances of conduct;
 Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
The giving of testimony by any witness, including an accused, does not operate as a waiver of the witness's privilege against self-incrimination when examined with respect to matters that relate only to the witness's character for truthfulness. Extrinsic evidence which is probative of an issue in the case and is not offered solely for impeachment is not barred by Evid.R. 608. See, State v. Williams (1986), 21 Ohio St.3d 33. On direct examination, Mrs. Griffith testified her husband never hit her. T., Vol. II pgs. 21-22. On cross-examination, Mrs. Griffith again maintained her husband never struck her. T., Vol. II p. 30. After the testimony, the trial court permitted the State to call Mr. Shaw, the downstairs neighbor as a rebuttal witness. Mr. Shaw testified he had seen appellant strike Mrs. Griffith on at least one occasion before this incident. Appellant maintains this testimony was improperly admitted. The issue, which appellant made relevant at trial, was the nature of the commotion heard by the downstairs neighbors before Mr. Shaw called the police. Mrs. Griffith maintained it was a justified struggle to disarm her father-in-law and she denied the altercation involved any violence between her and her husband. However, Mrs. Griffith went beyond the particular incident, stating appellant had never struck her. This response was elicited by defense counsel. We agree with appellee. The rebuttal evidence was more extensive than mere impeachment evidence bearing on Mrs. Griffith's character for truthfulness. Mrs. Griffith stated appellant never struck her, which would make it impossible for him to have struck her on the night in question. Because appellant made these issues relevant, we find Evid.R. 608(B) did not bar the testimony. Even if Evid.R. 608(B) should have barred the testimony, appellant failed to object to Mr. Shaw's rebuttal testimony on that basis. In fact, appellant's only objection was based upon prejudice.
Therefore, appellant is unable to raise this issue on appeal.
Appellant's second assignment of error is overruled.
GWIN, P.J. and EDWARDS, J. CONCUR.