JOURNAL ENTRY AND OPINION
{¶ 1} Aetna Casualty Surety Company (Aetna) appeals from a judgment of the common pleas court entered pursuant to a jury verdict determining Jody Kostohyrz to be an independent contractor of the Elyria Chronicle Telegram (Chronicle) and therefore not an insured of CNA Insurance Companies (CNA), Valley Forge Insurance Company (Valley Forge), American Casualty Company of Reading, PA (American), Continental Casualty Company (Continental), Transcontinental Insurance Company (Transcontinental), or Transportation Insurance Company (Transportation). The court further found Aetna was not entitled to contribution, subrogation or indemnification from the appellees. On appeal, Aetna assigns the following errors for our review:
 {¶ 2} "The jury's finding that Kostohryz was an independentcontractor of the Elyria Chronicle Telegram rather than its employee isagainst the manifest weight of the evidence."
 {¶ 3} "The trial court abused its discretion in admittingdefendant's exhibit A."
 {¶ 4} After having reviewed the arguments of the parties and the pertinent law, we affirm the judgment of the trial court. The apposite facts follow.
 {¶ 5} In the first few days of October 1996, Jody Kostohryz responded to a newspaper advertisement placed by the Chronicle seeking bundle haulers.[1] Jody met with Terry Luman, the Chronicle's single copy manager, regarding the position. Luman inquired whether she had automobile insurance but did not ask her to complete any paperwork. The next day Jody received a phone call asking her to report to the Chronicle at 3:00 a.m. on October 5 or 6, 1996, to begin work. In the morning hours of October 4 and 5, Kostohryz appeared for training and rode with another bundle hauler, in a Chronicle vehicle, to learn the route. Kostohryz stated in her deposition she never delivered the papers on her route alone.
 {¶ 6} Later that day, a vehicle operated by Cheryl Dillon went left-of-center and struck a vehicle occupied by Michael, Jody and Kate Kostohryz and an unnammed third passenger. Michael and Jody suffered multiple and permanent injuries.
 {¶ 7} As a result of the accident, the Kostohryzes filed a lawsuit against Dillon. At the time of the accident, Dillon was insured under a policy that provided minimal limits of coverage; Dillon was otherwise uncollectible and without assets. Policy limits were paid to the Kostohryzes and their passenger.
 {¶ 8} The Kostohryzes next presented a claim for underinsured motorist coverage to their automobile insurance carrier, which also paid them policy limits. The combined recovery totaled $106,250; the Kostohryzes did not feel they had been fully compensated.
 {¶ 9} Consequently, the Kostohryzes asserted a claim for under-insured motorist coverage under the business auto and umbrella policies issued by Aetna and purchased by Michael Kostohryz's employer, National Association of College Stores (National). Aetna denied the claim because it claimed both policies excluded underinsured motorist coverage for employees driving their personal vehicle for their own use.
 {¶ 10} The Kostohryzes also attempted to recover from CNA, Valley Forge, American, Continental, Transcontinental, and Transportation, each of which issued two insurance policies to the Chronicle, by notifying the Chronicle of the accident. At the time of the accident, the Chronicle was insured under a business automobile policy issued by American and an umbrella policy issued by Continental.[2]
 {¶ 11} Thereafter, the Kostohryzes filed a lawsuit against Aetna, seeking a declaration that Aetna was obligated to provide them with underinsured motorist coverage under the business auto and umbrella policies issued to National. The trial court agreed and held that Michael was entitled to underinsured motorist coverage under Aetna's commercial automobile insurance policy, including claims for loss of consortium; he was entitled to the same under Aetna's umbrella policy; Jody and Kate were likewise covered under both policies; and Aetna was entitled to "set-off" the underinsured motorist proceeds received by plaintiffs.[3]
 {¶ 12} Following the trial court's decision, Aetna settled the claim for two million dollars. Additionally, as part of the settlement, Aetna became subrogated to, and the Kostohryzes assigned to Aetna all right, title and interest in claims to, underinsurance coverage through any other applicable policy of insurance.
 {¶ 13} During the course of discovery, the Chronicle, which had previously denied any relationship with Jody, submitted a letter stating that she delivered papers independently on October 6 and that she was an independent contractor, not an employee of the Chronicle at the time of her accident. Aetna then moved the trial court to add American and Continental as third-party defendants. The trial court denied the motion and as a result, Aetna commenced the instant action against CNA, Valley Forge, American, Continental, Transcontinental, Transportation, and the Kostohryzes seeking declaratory relief and indemnification for a proportionate share of the monies it had paid to the Kostohryzes.
 {¶ 14} The case proceeded to trial, where the sole issue before the jury was whether Jody was the Chronicle's employee or an independent contractor. The jury found her to be an independent contractor and the trial court therefore determined she was not an insured under the American and Continental policies and entered judgment for the defendant-appellees.
 {¶ 15} In its first assigned error, Aetna claims the jury's finding that Jody was an independent contractor rather than an employee of the Chronicle was against the manifest weight of the evidence.
 {¶ 16} Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.[4]
 {¶ 17} "Whether someone is an employee or an independent contractor is ordinarily an issue to be decided by the trier of fact. The key factual determination is who had the right to control the manner or means of doing the work. In Gillum v. Indus. Comm. (1943),141 Ohio St. 373, this court set forth the following test in paragraph two of the syllabus:
 {¶ 18} "Whether one is an independent contractor or in service depends on the facts of each case. The principal test applied to determine the character of the arrangement is that if the employer reserves the right to control the manner or means of doing the work, the relation created is that of master and servant, while if the manner or means of doing the work or job is left to one who is responsible to the employer only for the result, an independent contractor relationship is thereby created.
 {¶ 19} "The determination of who has the right to control must be made by examining the individual facts of each case. The factors to be considered include, but are certainly not limited to, such indicia as who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes traveled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts."[5]
 {¶ 20} In her deposition, Jody stated the Chronicle gave her a route to follow, she was not responsible for recruiting customers, she did not make extra money if new customers subscribed to the paper, the Chronicle told her to pick up the papers around 3:00 a.m. in the morning and to deliver them by 5:30 that morning. She never completed paperwork for employment. She further stated she was not informed she had discretion to vary her route in any way. Jody admitted she could bring a helper with her or have someone else deliver the papers for her if she could not do so on a particular day. Jody stated she was not paid for the day she delivered papers and was unaware if she would have been eligible for benefits.
 {¶ 21} Luman testified the Chronicle typically does not allow anyone on the road to deliver papers without a signed independent contractor agreement but he did not recall having a conversation with Jody regarding her signing an independent contractor agreement. He also stated the bundlers had the discretion to mix up the order in which they delivered the papers, as long as the papers were delivered by 5:30 in the morning.
 {¶ 22} Brenda Lindsay, human resource director at the Chronicle, testified she did not have an employee file for Jody, there was no employee contract signed by Jody, and in fact, she had no record of Jody ever working for the Chronicle. Upon further investigation, she learned Jody had been a bundle hauler, but never completed any paperwork. Lindsay further testified employees of the Chronicle received health and life insurance, retirement, paid vacation and sick time, were covered under worker's compensation, could receive unemployment benefits, were paid by check issued through the payroll department, had taxes taken out of their pay, and received a W-2 at the end of the year. Independent contractors, on the other hand, were not eligible for benefits, had no taxes taken out of their pay and received a 1099 instead of a W-2.
 {¶ 23} Jody was never paid for the one occasion that she delivered papers; therefore, we are unable to determine her status by method of payment. However, the jury heard testimony that she had flexibility in the hours she could pick up the papers, as long as they were delivered by 5:30 in the morning; she also had discretion in the order she delivered her route. We also note she was required to use her own vehicle, she could enlist the help of others to complete her route, and she was required to have her own insurance. It is also important to recognize that once the initial training was complete, Jody was responsible for delivering the papers on her assigned route on her own and did not have to report to a supervisor, nor did any Chronicle employee check to see if she completed her route.
 {¶ 24} In this case, the jury's finding that Jody was an independent contractor was supported by competent, credible evidence going to all the essential elements of the case; therefore, we will not reverse it as being against the manifest weight of the evidence. Accordingly, this assigned error is without merit.
 {¶ 25} In the second assigned error, Aetna argues the trial court erred when it admitted defendant's exhibit A, a copy of a Chronicle advertisement seeking bundle haulers. A review of the transcript reveals Aetna failed to object at the time defendants moved the exhibit into evidence.[6] In fact, the court specifically asked if there was an objection and Aetna's counsel replied, "No, Your Honor." Therefore, this error was not properly preserved and is now waived on appeal.[7]
Accordingly, the second assigned error is without merit and the judgment of the trial court is affirmed. Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J., and COLLEEN CONWAY COONEY, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] A "bundle hauler" picks up bundles of newspapers every night and delivers them to stores and vending machines.
[2] The only party we are concerned with is CNA. The other insurance companies are named defendants in the underlying case.
[3] The court also denied Aetna's motion to add American and Continental and scheduled a hearing on prejudgment interest. See,Kostohryz v. Dillon (Cuyahoga C.P. Sept. 19, 2000), No. 327498, slip op. at 1-2.
[4] C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
[5] Bostic v. Connor (1988), 37 Ohio St.3d 144, 145-46 (citations omitted).
[6] See Transcript, p. 150, lines 20-24.
[7] See Evid.R. 103(A)(1); State v. Wilson (1982),8 Ohio App.3d 216.