{¶ 1} This is an accelerated appeal from a judgment of the Lucas County Court of Common Pleas, Probate Division, that appointed Estel Canterbury as the full guardian of the person of David R. Nease, an adult incompetent and Canterbury's natural son, with the provision that she not relocate David to Florida or any other state without the express permission of the probate court. Canterbury now appeals raising the following assignments of error:
 {¶ 2} "I. The court erred in finding as a matter of fact that Rick Nease's degenerative eye disease will eventually culminate in blindness.
 {¶ 3} "II. The court erred in finding the psychological evaluation of Dr. Wayne Graves not relevant and denying its admission into evidence."
 {¶ 4} David R. Nease was born on October 23, 1983. When he was approximately two years old, David sustained severe and permanent brain damage as a result of an injury he sustained while undergoing treatment for a heart condition. David cannot walk or feed himself, requires 24 hour care and has the mental abilities of a two to three year old child. He is, without dispute, incompetent to care for himself or his affairs. In addition to his many physical problems, David suffers from a circulatory problem called dysautonomia. As a result of that ailment, the blood flow to David's limbs is constricted and David's hands and feet do not receive proper circulation. Cold weather exacerbates this condition because it causes further constriction of the blood vessels.
 {¶ 5} When David was a child, his parents, appellant, Estel Canterbury, and appellee, Rick Nease, divorced. Although Estel was awarded custody of David and was David's primary caregiver, Rick lived nearby, had regular visitation and companionship with David and participated in David's care. Subsequently, Rick married Daphne Nease, with whom he has two children, Cody and Chelsea, who were eight and five years old respectively at the time of the hearing below. David's sister Rebecca, who was 16 years old at the time of the hearing below, also lives with David and Estel.
 {¶ 6} On David's eighteenth birthday, both appellant and appellee filed applications in the court below to be appointed guardian over David's person. At a hearing on November 16, 2001, the parties agreed that an interim guardian should be appointed for David until a full hearing could he held on the matter and Rick agreed that Estel should be that guardian. Rick's concern, however, was that Estel not remove David from the court's jurisdiction. Accordingly, the lower court named Estel interim guardian of David's person with the proviso that she not relocate David. At that hearing, the parties and the court further agreed to postpone a full hearing on the matter until they had received the report of Dr. Wayne Graves, a psychologist who had met with the family members.
 {¶ 7} On July 12, 2002, the case came before a probate court magistrate for a full hearing. At that hearing, Estel Canterbury, Dr. Wayne Graves, Rick Nease, Daphne Nease, and Johnie Nease, Rick's mother, testified. Although the testimony touched on many subjects relating to David's life, the primary issue before the court was whether it was in David's best interest to move to Florida. Estel testified that if she were appointed David's guardian, she intended to move to Sarasota, Florida. Rick opposed such a move because he believed it would take David away from a strong family support system that has been critical to his development. Estel stated that primarily, she wanted to move to Florida because the warmer climate would be beneficial to David's circulatory problems. She further stated that upon investigation, she found that the Oak Park School in Sarasota was particularly well suited to David's needs in that it provides a therapeutic environment as opposed to the academic environment of David's current school. Although David was 18 years old at the time of the hearing, Estel testified that he could attend the Oak Park School until he was 22 years old. Estel further admitted, however, that she had not determined if any schools in the Toledo area provided therapeutic based education for special needs individuals.
 {¶ 8} The testimony of David's other family members revealed that David has strong bonds with his father and extended family. David spends Wednesday evenings and every other weekend at his father's house where Rick watches sports games with him, plays the guitar for him and exercises him on the floor. In addition, David spends time with his half-sister and half-brother and appears to truly enjoy their company. David and his stepmother, Daphne, have also developed a bond and Daphne frequently picks up David for family visits. Indeed, Daphne is the sole driver in Rick's household in that Rick suffers from retinitis pigmentosa, a degenerative eye disease which, Rick stated, would ultimately cause him to go blind. At the time of the hearing below, Rick was in fact already legally blind and had surrendered his driver's license.
 {¶ 9} In addition to David's family members, Dr. Wayne Graves, a clinical psychologist who had evaluated the family pursuant to proceedings in the domestic relations court, testified at the hearing below. Dr. Graves stated that he conducted a psychological analysis of the family on November 1, 2001, pursuant to a request of the Lucas County Court of Common Pleas, Domestic Relations Division. The case before that court at that time only involved David's sister Rebecca and Estel's request to bring her to Florida with Estel and David. Accordingly, Dr. Graves admitted that his evaluation was couched in terms relative to Rebecca. Nevertheless, he further stated that in his evaluation, he did observe David's interaction with the entire family. Subsequent to his meeting with the family, Dr. Graves wrote a report in which he expressed his opinions regarding the best interest of Rebecca with regard to moving to Florida. Two pages of that report expressly deal with David. At the hearing below, Dr. Graves testified regarding his observations of David and David's interaction with his family members. At the conclusion of Dr. Graves' testimony, appellee objected to the admission of the report on the grounds that it was written in response to issues raised in the domestic relations case with regard to Rebecca. Appellant responded that the issues in the two cases were the same and that the entire report was relevant to the case in the probate court. The court sustained the objection in part, ruling that only pages 40 and 43, which related directly to David, would be admitted into evidence.
 {¶ 10} In addition to the live testimony at the hearing below, the court reviewed the depositions of David's doctors. Dr. Donald Cameron, a child neurologist, has been David's doctor since he was injured. Dr. Cameron explained the effects of dysautonomia on David's circulatory system and testified that David would do better medically in a warmer climate because he would be more comfortable. Nevertheless, Dr. Cameron further stated that climate was only one issue that affected David's quality of life. He further stated that David had shown signs of circulatory problems in the warmer months while living in Ohio and that the symptomology associated with dysautonomia can appear in warmer climates. Dr. Steven Gale, a vascular surgeon who has treated David, testified that David would do better from a vascular perspective in a warmer climate. He further stated, however, that if David were kept properly bundled in the winter, he would not suffer during the winter months in Toledo any more than he would in the summer months.
 {¶ 11} On July 18, 2002, the lower court magistrate filed his decision which included findings of fact and conclusions of law. The magistrate concluded that in light of David's health, emotional and educational considerations, it was not in David's best interest to move to Florida. The magistrate, however, recommended that Estel remain David's primary caregiver and guardian with the proviso that she not relocate to Florida or any other state without the express permission of the court. Appellant subsequently filed objections to the magistrate's report. Those objections were overruled in a judgment entry of August 23, 2002, which adopted the report and recommendation of the magistrate as the decision of the court. It is from that judgment that appellant now appeals.
 {¶ 12} In her first assignment of error, appellant challenges the trial court's finding of fact that Rick Nease's degenerative eye disease will eventually result in blindness. Appellant asserts that because no expert evidence was submitted on the matter, the court's finding was against the weight of the evidence.
 {¶ 13} In the proceedings below, Rick Nease testified that he suffers from retinitis pigmentosa and that ultimately he will lose his eyesight because of the disease. Based on this testimony, the court found: "Rick has retinitis pigmentosa, a degenerative eye disease that culminates in blindness over an undeterminable period of time. He is legally blind and has not driven his car for over one year." We first note that appellant did not object to Rick's testimony that he was going blind. Evid.R. 103(A) provides that a timely objection must be raised as to the admission of allegedly improper evidence. Failure to so object constitutes a waiver of any alleged error. State v. Wilson (1982),8 Ohio App.3d 216, 220. More importantly, however, it is clear from the magistrate's report that the court did not consider Rick's eye disease in determining David's best interest. In his conclusions of law, the magistrate stated that "to physically deprive Rick of the mere sight of his son on a weekly basis when he is going blind, as well as to move David to a distance that Daphne cannot simply drive the family would be cruel." Immediately after that sentence, the magistrate concluded: "The issue, however, is David's best interests, not that of Rick." The first assignment of error is therefore not well-taken.
 {¶ 14} In her second assignment of error, appellant asserts that the trial court erred in refusing to admit into evidence the psychological report prepared by Dr. Wayne Graves pursuant to an order by the domestic relations court. The record reveals that the court did admit pages 40 and 43 of the report after appellee objected to the admission of the entire report. In admitting a portion of the report, the trial court evidently determined that only pages 40 and 43 of that report were relevant to the issues before the court. Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence which is not relevant is not admissible. Evid.R. 402. It is within the sound discretion of the trial court to apply its common experience and logic to determine the relevance of evidence. State v. Lyles (1989),42 Ohio St.3d 98, 99-100. Thus, an evidentiary ruling will not be reversed on appeal unless there has been a clear and prejudicial abuse of discretion. O'Brien v. Angley (1980), 63 Ohio St.2d 159, 163. An abuse of discretion is more than an error or law or judgment; rather it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 15} Upon review, we cannot say that the trial court erred in refusing to admit into evidence Dr. Graves' report in its entirety. Although the entire report was never proffered into evidence, it is clear from Dr. Graves' testimony that it was prepared in response to the domestic relations court's inquiry as to whether it was in Rebecca's best interest to move to Florida. Moreover, Dr. Graves testified at the hearing below as to his evaluation of David in connection with his evaluation of Rebecca. Accordingly, it is clear that Dr. Graves' opinions regarding the likely effect on David of moving to Florida were presented to the court from the witness himself. We therefore cannot say that the trial court erred in excluding the entire report from evidence and the second assignment of error is not well-taken.
 {¶ 16} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas, Probate Division, is affirmed. Court costs are assessed to appellant.
 JUDGMENT AFFIRMED.
Richard W. Knepper, J., Mark L. Pietrykowski, J., and Judith Ann Lanzinger, J. CONCUR.