OPINION
Defendant-appellant Jennifer Wise appeals the January 20, 2000 Judgment Entry of the Licking County Court of Common Pleas, which found her guilty of operating a motor vehicle under the influence of alcohol, and sentenced her accordingly. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS
On July 11, 1999, at approximately 3:12 a.m., Trooper Robert Franks of the Ohio State Highway Patrol observed a vehicle in front of him slow to a stop. Because it appeared the vehicle was about to make an illegal U-turn, Trooper Franks slowed his vehicle in order to observe the driver. Instead of making an illegal U-turn, the driver turned left onto St. Rt. 79. The driver then stopped her vehicle crossways on the road, put her car in reverse and slowly backed down the road. Trooper Franks stopped his vehicle and continued to watch appellant pull into the dead end portion of old St. Rt. 79, stopping directly in front of a barricade. Trooper Franks stopped his cruiser behind appellant's vehicle, walked up to the car and asked appellant if everything was okay. During this conversation, Trooper Franks noticed another person in the passenger seat and a heavy odor of alcohol coming either from appellant and/or her car. Trooper Franks asked appellant to step out of the car and sit in the front seat of cruiser. Trooper Franks recognized a heavy odor of alcohol coming from appellant and decided to conduct field sobriety tests. When Trooper Franks administered the horizontal gaze nystagmus test, he found appellant exhibited six out of the six clues indicative of alcohol impairment. The trooper also conducted the one leg stand, and walk and turn tests. Based upon her poor performance on these tests, Trooper Franks also administered a portable breath test, which indicated appellant was over the legal limit. Trooper Franks placed appellant under arrest for driving under the influence and transported her to the Buckeye Lake Police Station to administer the BAC Data Master breath test. Trooper Franks observed appellant for at least twenty minutes prior to testing to prevent the oral intake of any materials and initiated a test sequence on the BAC machine. The test indicated appellant registered .192 grams per 210 liters of alcohol in her breath. Trooper Franks cited appellant with operating a motor vehicle in violation of R.C.4511.19 (A)(1) and (A)(3). On July 14, 1999, appellant pled not guilty to the offenses. On August 17, 1999, appellant filed a Motion to Suppress. The motion argued there was no reasonable articulable suspicion for the initial stop and subsequent seizure of appellant; no reasonable suspicion to continue the detention and to conduct sobriety tests; no probable cause for arrest; Miranda violations; and procedural violations while conducting the breath test. A hearing on the motion to suppress was held October 12, 1999. Captain Gary Green and Trooper Franks of the Buckeye Lake Police Department were the witnesses at the hearing. Captain Green testified he is the senior operator in charge of the BAC Data Master machine at the Buckeye Lake Police Station, responsible for the maintenance and calibration of the machine. Captain Green calibrated the BAC machine on July 6, 1999. Appellant's test was administered July 11, 1999. Captain Green calibrated the machine again on July 13, 1999. Both calibrations were within the tolerance of .005, as required by the Department of Health. Captain Green testified the calibration solution used in the tests immediately proceeding and immediately following appellant's breath test were from the same solution, and in compliance with all rules and regulations of the Department of Health. Finally, Captain Green testified he believed the machine was working correctly and the calibration was within the tolerance accepted by the State of Ohio. In a January 5, 2000 Judgment Entry, the trial court denied appellant's motion to suppress. Appellant changed her plea of not guilty to the charge of DUI in violation of R.C. 4511.19(A)(3) to no contest. The State dismissed the remaining charge. Via Judgment Entry filed January 5, 2000, the trial court found appellant guilty and sentenced her accordingly. It is from these judgment entries appellant prosecutes this appeal assigning the following as error:
 A. Whether Defendant's operation of her motor vehicle provided reasonable suspicion of unlawful activity to justify her initial seizure and detention.
 B. Whether, after Defendant's initial seizure, there was reasonable suspicion of unlawful activity to continue her detention to investigate whether she was operating a motor vehicle under the influence of alcohol.
 C. Whether Defendant's prejudicial admissions of consuming alcohol at a bar were made when Defendant was subjected to a custodial interrogation and prior to being advised of the Miranda warnings.
 D. Whether the State met its burden of showing substantial compliance with the Ohio Department of Health Regulations regarding alcohol testing of Defendant's breath specimen, specifically, whether the State properly established the target value for the calibration solution used for the instrument check prior to and subsequent to Defendant's test.
 I
Appellant presents one assignment of error divided into four parts. We will address each in turn. There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See: State v. Fanning (1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486, State v. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See: State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96, State v. Claytor (1993), 85 Ohio App.3d 623,627, 620 N.E.2d 906, 908, and State v. Guysinger (1993), 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, ". . .as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 A
In Subsection A of her assignment of error, appellant maintains the trial court erred in finding Trooper Franks had reasonable suspicion of unlawful activity to justify appellant's initial seizure and detention. We disagree. The Fourth Amendment protects people against unreasonable searches and seizures and requires that searches and seizures be founded upon an objective justification. However, "not all personal intercourse between policemen and citizens involves `seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a `seizure' has occurred." Terry v. Ohio (1968), 392 U.S. 1,19, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905, fn. 16. The Fourth Amendment is not implicated when a police officer approaches a person in a public place, requests to speak to him, receives permission to do so and then asks questions because the person is free to walk away. Florida v. Royer (1983), 460 U.S. 491, 497-498,103 S.Ct. 1319, 1323-1324, 75 L.Ed.2d 229, 235-237. Nor does the fact that the police officer identifies himself as such elevate the encounter from consensual to a seizure. Id. at 497,103 S.Ct. at 1323-1324, 75 L.Ed.2d at 235-236. For example, a police officer's request to examine a person's identification does not render an encounter nonconsensual. Florida v. Bostick (1991),501 U.S. 429, 435, 111 S.Ct. 2382, 2386-2387, 115 L.Ed.2d 389, 398. In its January 5, 2000 Judgment Entry, the trial court stated: The Court further notes the officer did not stop the Defendant but that she had pulled to the barricades at the end of a dead end portion of a former state highway at the time he approached her. The officer obviously acted under the assumption that the Defendant was lost or needed assistance by virtue of the way she operated her motor vehicle making a wide turn, stopping in a roadway, backing up and then proceeding down a dead end portion of a former state highway. The officer's initial inquiry upon reaching the vehicle demonstrates this in that he asked her if everything was okay.
Judgment Entry at 2-3.
We find Trooper Franks' action of pulling up behind appellant's stopped car and approaching the vehicle did not amount to a stop requiring a reasonable, articulable suspicion. Regardless of Trooper Frank's subjective intent in approaching the vehicle, he did not make a traffic stop. He stopped his car and walked up to appellant's vehicle which had already been stopped and parked at a barricade on a public highway. For this reason, subsection A of appellant's assignment of error is overruled.
 B
In subsection B, appellant maintains the trial court erred in finding a reasonable suspicion of unlawful activity existed to continue her detention and to investigate whether she was operating a vehicle under the influence of alcohol. We disagree. We find the mere fact Trooper Franks smelled a strong odor of alcohol coming from the car provided him with enough reasonable, articulable suspicion to remove appellant from her vehicle and investigate further. State v. Blackburn (1996), 115 Ohio App.3d 678. Accordingly, subsection B of appellant's assignment of error is also overruled.
 C
In subsection C, appellant's asserts the trial court erred in failing to suppress prejudicial statements appellant made at the scene. Appellant maintains Trooper Franks' action of taking appellant and putting her into the front of the cruiser was a custodial interrogation requiring Miranda warnings before any interrogation. We disagree. According to the United States Supreme Court in Berkemer v. McCarty (1984), 468 U.S. 420, 104 S.Ct. 3138,82 L.Ed.2d 317, a person arrested for driving while intoxicated is entitled to Miranda warnings: "We hold therefore that a person subjected to custodial interrogation is entitled to the benefit of the procedural safeguards enunciated in Miranda, regardless of the nature or severity of the offense of which he is suspected or for which he was arrested. * * * " Id. at 434, 104 S.Ct. at 3147.
It is undisputed Trooper Franks read appellant the Miranda warning upon arriving at the Buckeye Lake Police Department. However, our inquiry does not stop there. We must also analyze the time period between the trooper's initial stop of appellant and Trooper Franks' reading her Miranda warnings. In Berkemer, supra, the United States Supreme Court was asked to decide if an officer's roadside questioning of a motorist detained pursuant to a routine traffic stop constituted a custodial interrogation, requiring the officer to read the detained motorist Miranda warnings. The Court held the questioning was not a custodial interrogation, explaining: First, detention of a motorist pursuant to a traffic stop is presumptively temporary and brief. * * *
Second, circumstances associated with the typical traffic stop are not such that the motorist feels completely at the mercy of the police. * * * In short, the atmosphere surrounding an ordinary traffic stop is substantially less `police dominated' than that surrounding the kinds of interrogation at issue in Miranda itself * * *. Berkemer, supra, 468 U.S. at 437-439,104 S.Ct. at 3148-3149.
Pursuant to Berkemer, supra, Trooper Franks was not obligated under these circumstances to read appellant Miranda warnings, until he determined appellant should be arrested. Any evidence obtained during the period appellant was detained in order for the trooper to make this determination and prior to arrest cannot be suppressed as a result of her not receiving Miranda warnings. Trooper Franks provided the only testimony with regard to appellant's statements, as follows:
 Q. Prior, prior to you asking her to exit her vehicle and come back and sit in your cruiser, did you ascertain whether or not the odor was coming from her or coming from any other person or portion of the interior of the motor vehicle?
 A. I, we spoke. I don't, I didn't write down exactly what she did say, no. At some point I did ask her what she had been drinking.
* * *
 I don't recall what point I asked her how much she had been drinking. I spoke with her up there. She did appear to have an odor of alcohol about her. I then asked her to come back to the patrol car.
 Q. So it's your testimony, trooper, that you questioned her as to whether or not she consumed alcohol while she was seated in her car?
 A. No, I didn't say that. At some point during the stop, prior to the sobriety test, I did. I don't have it documented if it was in her car or in my car.
 Q. * * * Did she respond to your question whether or not she had consumed any alcoholic beverage?
 A. She did state that she was coming from, I think she said it was Captain Woody's, and that she had been drinking.
 Q. Now, do you think that the person who admits coming from a bar in the midst of consuming alcoholic beverages, is that a material and relevant fact in a DUI investigation?
A. Yes.
 Q. And isn't it true, trooper, that there is no indication in your written report that you questioned her, let alone that she admitted to being at a bar and had consumed alcoholic beverages?
A. Yes.
 Q. Was she advised at that time that she was free to leave, that she was free not to have a seat in your cruiser?
 A. She was not advised. She was free and she was not advised she was under arrest either.
Q. Okay. Was she free to leave?
 A. I, once I started observing the alcoholic, the odor of alcoholic beverage about her, you could see that she was apparently, she seemed to be impaired by alcohol. I would not have let her drive away until I knew at what level her, her level was.
 Q. Her level, let me be time specific. At the time you asked her to have a seat in your cruiser and the door was closed, was she free to leave?
A. Not until we were done, no.
 Q. Now you testified regarding the balancing exercises and other tests that you did. There was, was your cruiser equipped with a video camera?
 A. I don't know what patrol car I was in. I don't know if it did or not.
 Q. Now you testified regarding the statement that my client made that she was coming from Captain Woody's and she had consumed some alcohol. You don't recall whether that was made prior to or after you mirandized her?
 A. It would have been prior to her being, the 70 being read to her.
 Q. But you don't, you don't recall when or where this exchange took place.
A. Not at which car, no.
 Q. It could've been in your cruiser when she was not free to leave, correct?
 A. She, I could've asked her when she sat down in the patrol car, yes.
 Q. And the only time you mirandized my client was at the Buckeye Lake Police Department?
A. Yes.
 Q. Do you recall any other admissions or statements that my client made which may be interpreted as admissions of alcohol consumption?
A. Admission to alcohol, no.
T. 28-32. (Emphasis added).
In its January 20, 2000 Judgement Entry, the trial court stated: [The Court] finds the Defendant's admissions at the time to have been prior to her arrest when she was not under arrest or in the custody of the police or being subjected to custodial interrogation.
Judgment Entry at 3. We agree with the trial court. Any incriminating statements appellant may have made under these circumstances were before formal arrest and not during a custodial interrogation pursuant to Berkemer. Trooper Franks was investigating whether or not appellant was under the influence of alcohol. Appellant was either in her own car, or in the front seat of the cruiser at the time she made the incriminating statement. In either case, it was before a custodial arrest was effected. Accordingly, Miranda warnings were not required at the time the statements were made. Subsection C of appellant's assignment of error is overruled.
 D
In subsection D, appellant submits the trial court erred in finding the State demonstrated substantial compliance with Ohio Department of Health Regulations. Specifically, appellant contends the State was required to show substantial compliance with the regulations by introducing a Department of Health Certificate of Solution Analysis, or in the alternative, the records custodian from the Ohio Department of Health and, by failing to do so, the State never established the BAC machine was in proper working order prior to the test administered to the appellant. At the hearing on the motion to suppress, Captain Green testified he was responsible for maintaining and calibrating the BAC machine at the Buckeye Police Department, and for maintaining all records relative to testing and maintenance. Captain Green testified he performed the calibration tests before and after appellant's breath test and each time found the machine to be within the tolerance levels dictated by the Department of Health. Evid.R. 103(A)(1) specifically provides as follows: (A) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context.
See also: White v. Richmond (1842), 16 Ohio St. 6; State v. Grubb (1986), 28 Ohio St.3d 199; State v. Wilson (1982), 8 Ohio App.3d 216.
Appellant did not object during the direct testimony of Captain Green. However, appellant maintains Captain Green's testimony regarding his knowledge of the target value for the calibration solution during his cross-examination was hearsay. The following exchange took place between appellant's counsel and Captain Green:
 Q. And with regard to the target value for that calibration solution, you did not set that target value, did you.
A. No, I did not.
 Q. That's set by the Ohio Department of Health, is that accurate?
A. Yes, it is.
We find appellant's failure to object to the direct examination testimony and failure to move to strike such testimony after cross-examination precludes his raising this assignment on appeal. If appellant had objected to the testimony or moved to strike below, the State would have had an opportunity to present additional testimony and/or evidence. However, the State was under no obligation to supplement its case when appellant failed to object or move to strike. Without an objection or motion to strike, appellant waived the error of which he now complains. Subsection D of appellant's assignment of error is overruled. Appellant's sole assignment of error is overruled.
The January 20, 2000 Judgment Entry of the Licking County Court of Common Pleas is affirmed.
 _____________________ Hoffman, P.J.
By: Wise, J. and Reader, V.J. concur.