OPINION
{¶ 1} Plaintiff-Appellant, Susan R. Gibson, individually and as administratrix of the Estate of Mike E. Gibson, and also as parent, natural guardian and next friend of Kayla and Samantha Gibson (collectively, "plaintiff"), has appealed the judgment of the Paulding County Common Pleas Court directing a verdict in favor of Defendant-Appellee, Drainage Products, Inc ("defendant"). On March 2, 2001, this Court rendered our determination upon the appeal.[1] Upon further review, the Ohio Supreme Court found, contrary to our prior decision, that plaintiff's first assignment of error had merit, and it reversed our decision and remanded the matter to this Court for consideration of plaintiff's remaining assignments of error.[2]
 {¶ 2} In the remaining assignments of error, plaintiff contends that the trial court erred in permitting testimony regarding Susan Gibson's cohabitation with another man after her husband's death and in allowing the defendant to question her expert concerning the application of OSHA standards. We find that plaintiff waived any error regarding the cohabitation evidence by eliciting the evidence upon direct examination of Susan Gibson. Furthermore, given the material discussed in plaintiff's examination of its expert witness, we find that defense counsel was entitled to cross-examine the witness and impeach him as to his knowledge and application of OSHA regulations. Accordingly, consistent with the Ohio Supreme Court's pronouncement, we must reverse the judgment of the trial court.
 {¶ 3} This case arose from a February 21, 1996 incident, which led to the death of Mike Gibson during the course of his employment with defendant. The defendant is a company that manufactures plastic corrugated drainage pipe and employed Mike Gibson on a full-time basis from March 1994 until his death. As part of defendant's manufacturing process, plastic chips are fed by a conveyor into an "extruder" that heats the plastic until it becomes malleable, at approximately 500 degrees Fahrenheit. The plastic is then pushed through a "screen changer" that removes impurities and then through two pipes that force the molten plastic into a die that molds it into a tube shape. At certain intervals the piping is wrapped with heating coils, which are intended to keep the plastic at a consistent temperature as it passes through the machine. The manufacturing line is approximately sixty feet long.
 {¶ 4} On February 21, 1996, defendant's employee, Tim Jewell, who was working as an "operator" of a portion of the manufacturing line, noticed that molten plastic appeared to be seeping from around the screen changer. Various employees conferred about the issue and began efforts to repair the problem.
 {¶ 5} Mike Gibson was a "mixer" and did not work directly on the line; he worked in a different but nearby area of the plant. However, testimony in the record indicated that employees who had completed their assigned tasks were expected to assist other employees. Gibson approached the scene to offer assistance. Shortly thereafter, the die emitted a hissing sound, a "pop," and then molten plastic blew out of the pipe connected to the die. Gibson was standing approximately three feet away from the open end of the pipe and was sprayed directly in the face with molten plastic. He was immediately transported by EMS to the Van Wert County Hospital and subsequently to Parkview Memorial Hospital in Fort Wayne, Indiana. While at the Indiana hospital, Gibson suffered an asthma attack that was allegedly treated in a negligent manner and died three days after the initial injury.
 {¶ 6} On January 21, 1997, plaintiff filed this action in the Paulding County Common Pleas Court, alleging that Haviland Drainage Products, Inc. had committed an intentional tort against Mike Gibson that resulted in his death. Plaintiff also alleged medical malpractice against the Indiana Hospital and the two Indiana doctors who had treated Mr. Gibson. The claims against the Indiana defendants were dismissed prior to trial due to lack of personal jurisdiction. Moreover, while defendants, Drainage Products, Inc. and Haviland Products, Inc. are separate but related companies, Mike Gibson was employed by Drainage Products, Inc. As a result, plaintiff filed an amended complaint proceeding solely against defendant Drainage Products, Inc.
 {¶ 7} The matter proceeded to trial solely on the intentional tort claim against defendant. Defendant moved for summary judgment contending, in part, that plaintiff had failed to present evidence sufficient to establish intent according to the "substantial certainty" test set forth by the Ohio Supreme Court in Fyffe v. Jeno's, Inc.[3]
By entry dated April 27, 1998, the trial court overruled the motion.
 {¶ 8} The matter proceeded to a jury trial on October 25, 1999. At the close of plaintiff's case, defendant moved for a directed verdict pursuant to Civ.R. 50(A), again contending that plaintiff had not proven the necessary elements for establishing an intentional tort as set forth in Fyffe. The trial court agreed and granted the motion, entering a directed verdict in defendant's favor. Plaintiff appealed this determination, asserting three assignments of error for our review.
 {¶ 9} As mentioned previously, we determined that plaintiff had failed to present sufficient evidence that defendant had required Gibson to continue to perform any dangerous task.[4] Given our disposition of the first assignment of error, we found the remaining evidentiary arguments to have been rendered moot.[5] Upon further review, the Ohio Supreme Court found that reasonable minds could differ as to whether the employer had required the employee to engage in a dangerous task.[6]
Pursuant thereto, the Supreme Court found plaintiff's first assignment of error to have merit and remanded the matter to this Court for consideration of the plaintiff's remaining assignments of error.
 Assignment of Error II {¶ 10} "The trial court erred in ruling it was admitting evidence of the surviving spouse cohabitating with another after decedent's death."
 {¶ 11} At trial, plaintiff moved the trial court to prevent the defendant from admitting evidence that Susan Gibson, Mike Gibson's widow, had been cohabitating with another man after his death immediately prior to calling her as a witness. Plaintiff's counsel informed the court that if the evidence was deemed admissible, he would bring out the issue on direct examination instead of objecting to the evidence upon submission by defendant. The court found that evidence of her cohabitation with another male was relevant to the issue of damages and her loss of consortium claim. Plaintiff's counsel proceeded to call Susan Gibson to the witness stand and inquire about her cohabitation with another man after her husband's death.
 {¶ 12} At the outset, we observe that, while made at trial, plaintiff's motion is essentially a motion in limine. A pretrial ruling on a motion in limine is a "tentative, preliminary or presumptive ruling about an evidentiary issue that is anticipated but has not yet been presented in its full context. An appellate court need not review the propriety of such an order unless the claimed error is preserved by an objection, proffer, or ruling on the record when the issue is actually reached and the context is developed at trial."[7] However, a subsequent ruling contemporaneous to the submission of the evidence at trial on the record when the issue is actually reached and developed which conforms or conflicts with the tentative order in limine may be sufficient to preserve an alleged error for review on appeal.[8] "[I]n order to preserve supposed error from an anticipatory order in limine, the complaining party must raise the evidentiary issue on the record at the place in the trial that the foundation and context have actually been developed. * * * If counsel opposes the reception of an adverse party's evidence, he must object when the evidence is actually presented, or he may well have waived any objection to the denial of his earlier motion in limine."[9]
 {¶ 13} A party cannot, however, in one instance complain of the introduction of an issue and then introduce that issue on direct examination without waiving his prior objection. While the strategy of lessening the negative impact of the evidence by revealing the evidence and explaining it upon direct is recognized and accepted by many trial attorneys as a proper course of action, by making the choice to introduce the evidence directly, a party waives the issue for appeal.[10] By voluntarily introducing testimony concerning Susan Gibson's cohabitation with another man after Mike Gibson's death on direct examination, plaintiff waived any objection to introduction of evidence related thereto.[11]
 {¶ 14} Accordingly, plaintiff's second assignment of error is overruled.
 Assignment of Error III {¶ 15} In the third assignment of error, plaintiff avers that "[t]he trial court erred in permitting defense counsel to adduce and argue that since OSHA cited the violations as serious, not willful, no employer intentional tort claim existed." Plaintiff maintains that the intermingling of OSHA standards with that of intentional workplace tort law could only serve to confuse and mislead the jury, thereby mandating exclusion of the assertedly prejudicial evidence under Evid.R. 403(A).
 {¶ 16} At the outset, we note that the admission or exclusion of evidence rests within the sound discretion of the trial court and should not be disturbed on appeal absent an abuse of discretion that materially prejudices a party.[12] An abuse of discretion implies that a court's actions are unreasonable, arbitrary or unconscionable.[13] A decision is unreasonable if no sound reasoning process would support the decision.[14] Evid.R. 403(A) provides that, even if relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
 {¶ 17} At trial, plaintiff called as an expert witness James McCarthy, a safety specialist specializing in the identification, evaluation, and minimization of industrial safety hazards. McCarthy was retained by plaintiff to investigate the circumstances of the underlying incident and render an opinion to a reasonable degree of professional certainty as to the nature of the danger associated with conditions surrounding the incident and causation of the accident. For his opinion, McCarthy reviewed applicable OSHA regulations and was questioned by plaintiff's counsel as to the role of those regulations in the accident. In addition, he was given several hypotheticals concerning the conduct of the participants in the event and was asked his opinion as to whether their conduct satisfied OSHA standards or regulations. McCarthy was further asked to review the circumstances in light of the elements necessary to establish an intentional tort.
 {¶ 18} Given the preceding discussion of McCarthy's expertise, the role and application of OSHA regulations in the underlying incident, and the satisfaction of elements necessary to establish an intentional tort, defense counsel was entitled to cross-examine McCarthy and impeach him as to his knowledge of OSHA regulations, the nature of and varying degrees of OSHA violations, and application of those standards to the circumstances of the underlying incident, and to compare those standards to the elements necessary for an intentional tort claim. Any perceived discrepancy or confusion as to the application of those regulations or the elements necessary for the intentional tort claim could have been addressed by plaintiff's counsel upon redirect or by appropriate jury instructions. Therefore, we do not find that the trial court abused its discretion in this regard. Accordingly, plaintiff's third assignment of error is overruled.
 {¶ 19} Because appellant's first assignment of error has been determined to have merit, the judgment of the trial court is hereby reversed and this cause is remanded for further proceedings in accordance with this opinion.
Judgment reversed and cause remanded.
SHAW, P.J., and HADLEY, J., concur.
[1] Gibson v. Drainage Products, Inc. (March 2, 2001), Paulding App. No. 11-99-14.
[2] Gibson v. Drainage Products, Inc. (2002), 95 Ohio St.3d 171,2002-Ohio-2008.
[3] Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraphs one and two of the syllabus.
[4] Gibson v. Drainage Products, Inc. (March 2, 2001), Paulding App. No. 11-99-14.
[5] Id.
[6] Gibson v. Drainage Products, Inc. (2002), 95 Ohio St.3d 171,2002-Ohio-2008.
[7] State v. Grubb (1986), 28 Ohio St.3d 199, 201.
[8] State v. Maurer (1984), 15 Ohio St.3d 239, 259, fn. 14, citing Palmer, Ohio Rules of Evidence, Rules Manual (1984) at 446; Schurr v.Davies (May 15, 1986), Van Wert App. No. 15-84-23, quoting State v.White (1982), 6 Ohio App.3d 1, 5; see, also Thomas v. Tuway AmericanGroup (Jan. 25, 2000), Mercer App. No. 10-99-17, State v. Boyd (Jan. 12, 1995), Cuyahoga App. No. 65883.
[9] White, 6 Ohio App.3d at 4 (citation omitted).
[10] Klien v. Dietz, M.D. (Dec. 16, 1998), Mahoning App. No. 95 CA 47, citing State v. Miller (1988), 56 Ohio App.3d 130, 132; State v.McCaskill (Oct. 3, 1996), Franklin App. No. 96APA03-287.
[11] Id.; State v. Leslie (1984), 14 Ohio App.3d 343, 344; Statev. Bolton (May 30, 2000), Columbiana App. No. 98-CO-33, dismissed, appeal not allowed by 90 Ohio St.3d 1427; Rodock v. Village of MinervaPark (Dec. 19, 2000), Franklin App. No. 99AP-1402; State v. Wilson
(1982), 8 Ohio App.3d 216.
[12] Krischbaum v. Dillon (1991), 58 Ohio St.3d 58, 66.
[13] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[14] AAAA Enterprises, Inc. v. River Place Community UrbanRedevelopment Corp. (1990), 50 Ohio St.3d 157, 161.